# Richmond

## ROBERT H. JACKSON, ET ALS. V JOHN D. GREENHOW.

### January 15, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Gregory, JJ.

*Ashton Dovell* and *V. M. Geddy,* for the appellants.

*Channing M. Hall,* for the appellee.

CAMPBELL, J., delivered the opinion of the court.

John D. Greenhow, a colored citizen of the city of Williamsburg, filed his bill of complaint in the circuit

court to enforce against the appellants, Robert H. Jackson, W. A. R. Goodwin and Mrs. Ethel H. Goodwin, his wife, an express trust, created by parol agreement, in a certain house and lot situated in Williamsburg. The bill alleges that in August, 1923, complainant entered into an agreement with Jackson, whereby Jackson was to purchase for complainant, from one Clifton Williams, the house and lot herein involved, for the sum of $800.00; that Jackson agreed to pay Williams the purchase price and to hold title to the property until complainant had paid Jackson, without interest, the sum of $800.00 in labor; that pursuant to the agreement, complainant went into possession of the property and has been in continuous possession of the same; that he has performed labor and services for Jackson aggregating the sum of $496.80; that at no time was he derelict in the performance of any service required of him by Jackson; that such service included the cutting of grass and tending of flowers and shrubs for a period of one day a week at the rate of forty cents per hour, as well as acting as furnace man during the winter months for the sum of fifty cents per day; that in April, 1928, in a settlement had between complainant and Jackson, the latter acknowledged in writing the amount paid up to that time; that without the knowledge of complainant, Jackson, on the 4th day of June, 1928, executed and delivered to W. A. R. Goodwin a deed purporting to convey the said property; that prior to this attempted conveyance Goodwin had actual notice as to the right, interest, title and equity of complainant, and that the deed from Jackson to Goodwin is null and void.

The prayer of the bill is that the trust in the property for the use and benefit of complainant be established; that complainant be permitted to pay any balance due; that the deed from Jackson to Goodwin be set aside as null and void, and that the trust be enforced by declaring title in complainant.

The defendants answered the bill, denying generally the allegations thereof, but failed to assert affirmatively that Goodwin was a *bona fide* purchaser without notice. When the cause came on to be heard complainant and defendants entered into this stipulation: " * * that it be stipulated by all parties to this suit that the evidence be heard *ore tenus* by the court for the hearing and determination of this cause, with a jury sitting, and with such issues, if any, to be submitted to said jury as the court may determine, and regardless of the submission of such issues, for the court to decide and determine this cause, upon said *ore tenus* hearing."

Thereupon the chancellor impanelled a jury who were duly sworn to try the following issues:

"First inquiry: Did R. H. Jackson purchase the house and lot described in the bill of complaint for himself, or did he purchase said house and lot under a previous or contemporaneous agreement with John D. Greenhow whereby the latter was permitted to subsequently acquire same, and if so, what was the agreement between Jackson and Greenhow?

"Second inquiry: If the jury find that an agreement existed between Jackson and Greenhow whereby Greenhow was to purchase from Jackson the said house and lot, did W. A. R. Goodwin have any notice thereof, prior to the conveyance from Jackson to Goodwin?"

Evidence was introduced by the parties and the jury were instructed as follows:

"The court instructs the jury as to the first inquiry that while the burden is upon the complainant to prove his case by a preponderance of the evidence, nevertheless, the law does not require such proof to be beyond a reasonable doubt, and it is sufficient if the evidence convinces the jury of the claim made by the complainant.

"The court instructs the jury that you are the judges of

the credibility of the witnesses, and you may determine from the whole of the testimony of such witnesses, and their demeanor on the stand, of their means of knowledge, and from their interest or lack of interest in the result of the case, as to which witnesses are more worthy of belief.

"The court instructs the jury that while Greenhow's mere possession of the property would not of itself be notice to Dr. Goodwin of his claim, yet it is a circumstance which the jury may consider in determining whether he pursued the inquiries which a prudent man should have made in order to exercise the proper caution before buying.

"The court instructs the jury that even though Dr. Goodwin may have had the title examined, yet if he had notice, or should under the previous instructions have pursued inquiries which would have led to knowledge of Greenhow's claim, he took title subject to such claim, however perfect the recorded title might be.

"The court further instructs the jury that any notice to Dr. Goodwin may be either actual or constructive, and either kind of notice is sufficient. This does not mean that Greenhow must himself have given notice to Dr. Goodwin. Any knowledge coming to Dr. Goodwin of Greenhow's equities would be sufficient. Whatever circumstances are sufficient to put a purchaser upon inquiry, which would lead to the discovery of the equities, will be good constructive notice, for the law would then require that the purchaser pursue such equities. Whenever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed his duty, and failure to make such inquiry amounts to bad faith. Means of knowledge, with the duty of using them, are in equity equivalent to knowledge itself. No one has the right to shut his eyes or his ears to the inlet of information, and then say he is *bona fide* purchaser without notice.

"The court further instructs the jury that the fact of notice may be inferred from circumstances, as well as proved by direct evidence; and where the facts and circumstances are such as to raise a presumption of notice, it devolves upon the defendant purchaser to rebut same.

"The court instructs the jury that the burden is on John D. Greenhow to prove by a preponderance of the evidence that R. H. Jackson entered into an agreement with the said Greenhow at the time of and prior to the purchase of the Williams property whereby it was purchased for the said Greenhow and not for Jackson, and unless they believe from a preponderance of the evidence that the said Greenhow has carried this burden then they must find that there was no contract under the first issue directed to them.

"The court instructs the jury that while subsequent admissions made by Jackson after the date of conveyance of the Williams property, concerning any contract made between himself and Greenhow prior to or at the time of such purchases, may be considered in support of the agreement alleged to have been made between Jackson and Greenhow at or before the date of such deed, such declarations are not sufficient of themselves to create a contract.

"The court instructs the jury that the burden of proving notice to a purchaser for value is on him who alleges it. Where a valuable consideration has been paid it is not sufficient to prove fraud on the part of the grantor, but in order to set aside such grant it is necessary to prove that the grantee had notice of the fraudulent intention of the grantor. Such notice may be proven either by direct or positive evidence or it may be inferred from circumstances, but in either case the proof of such notice must be so strong and clear as to fix upon the grantee the imputation of *mala fides*, that is, of bad faith."

The verdict of the jury upon both issues was in favor of the complainant. Whereupon the court entered a decree granting the relief prayed for in the bill of complaint.

■ There are no novel questions of law involved in this litigation. Since the decision of *Young* v. *Holland*, 117 Va. 445, 84 S. E. 637, it has been consistently held by this court that since Virginia has never adopted the seventh section of the English statute of frauds, an express trust in real estate could be created and established by parol. Approving the doctrine laid down in *Young* v. *Holland*, *supra*, this court, in *Daniel* v. *Viar*, 147 Va. 328, 137 S. E. 526, 527, said: "The court, in an elaborate opinion, concludes that at common law, before the enactment of the statute of frauds, an express trust in lands could be created by parol; that the seventh section of the English statute requires a writing for the proof of an express trust in lands, and the eighth excepts from its operation resulting trusts, but as these sections have never been enacted in Virginia, the matter of parol trusts rests as it did at common law; that the omission of these sections was conclusive of the fact that the sixth section did not exclude parol trusts, and held that the statute of frauds in no way affected the case."

■ In view of these decisions, there can be no question as to the law of this case. The instructions given to the jury embodied, in our opinion, correct principles of law. Therefore, a correct determination of the controversy depends solely upon the facts as disclosed by the evidence. The burden is upon the complainant to show by a preponderance of the evidence that the agreement relied on is certain and definite in its terms; that the acts proved in part performance thereof refer to, result from and were made or done in pursuance of, the agreement; that the agreement has been so far executed that a refusal of complete execution would operate a fraud upon the complainant and place him in a situation which does not lie in compensation. *Shield* v. *Adkins*, 117 Va. 616, 85 S. E. 492.

■ Even though it be conceded that the evidence is

conflicting, we have the verdict of the jury resolving all conflicts in favor of complainant. In addition, we have the judgment of the learned chancellor who, though not bound by the verdict, based that judgment upon the evidence adduced, the demeanor of the witnesses, with full knowledge of the rules of law governing the case. The trial of the issues of fact were referred to the jury. We are, therefore, chiefly concerned with the case made out by the complainant and such evidence on the part of defendants as does not conflict with the evidence of the complainant.

In our opinion, the evidence relating to the first issue is sufficient, and the burden imposed upon the complainant by law is sustained. That Greenhow, though illiterate, is worthy of belief is evidenced by the fact that no effort was made to impeach him. Frugal in his habits, economical in his expenditures and faithful in the discharge of his obligations to those white people he served, he was desirous of obtaining a home. He was then in the part-time employ of Mr. Jackson, from whom he requested a loan of $25.00 to buy a lot on which to place a house he contemplated purchasing. He was advised by Jackson that it would be better to buy a house than to move a house onto a vacant lot. The Williams property was then suggested. When asked how much he was willing to pay for it, Greenhow replied he would pay eight or nine hundred dollars. The property was purchased at the price of eight hundred dollars and Greenhow took possession of it. He planted trees and flowers, made repairs to the house and erected sanitary closets as required by the health authorities. During the period of occupancy Jackson made no repairs, but did advise Greenhow: "Improve your property and if you want to sell it you can get more for it."

The real estate dealer who made the sale of the property, when asked for whom the purchase was made, stated:

"Why as I understood it from Jackson, he was buying it for Greenhow so as to have a man steady \* \* \* so as to have him when he wanted him."

Mrs. Virginia Blanchard, clerk of the court, testified that she took the acknowledgment to the Williams deed; that prior thereto she heard Jackson state that he was buying a home for Greenhow and was going to sell it to him. She also testified that subsequent to the sale she heard Jackson state: "I told Greenhow to go out and look around and see if he could find a home and pick out any house he wanted and I would buy it for him \* \* \*. He said that Greenhow selected the house and he bought if for him."

Otis Luster testified that he heard Mr. Jackson tell Greenhow that he had bought this house for him and he would let him have the house for just what he paid for it, no interest, and work it out."

It is the contention of Mr. Jackson that Greenhow was a renter of the property and not the purchaser thereof. This contention does not coincide with a statement furnished by him to Greenhow which reads in part: "Account of Caps payments on house he lives in." "Caps" was what he called Greenhow.

Our first conclusion is that the jury and the court correctly determined the first issue herein involved.

We will now consider the second issue, viz: Was Goodwin a *bona fide* purchaser without notice? There is not the slightest evidence that Dr. Goodwin, in fact, in his purchase of the property, acted in bad faith. He is the active agent of Mr. John D. Rockefeller, Jr., in the restoration movement in the city of Williamsburg, and has been instrumental in securing over two hundred pieces of property in order to carry into effect this laudable undertaking. In the scheme of development the Greenhow property was included. After an examination of the records in the

clerk's office, Dr. Goodwin paid to Jackson the sum of $800.00 and received a deed to the property. Overwhelmed as no doubt he is with important transactions, it is not strange that Dr. Goodwin should be somewhat forgetful of this particular purchase.

Greenhow testified positively that he told Dr. Goodwin that Mr. Jackson had bought him the home, and that he was working for Jackson to pay for it. Dr. Goodwin does not specifically deny this statement. His language is: "I haven't the faintest recollection in the world of having been told by Greenhow that Mr. Jackson was buying a house for him." Dr. Goodwin does, however, in his examination as a witness, make this statement: "I do remember perfectly well Mr. Jackson wrote me that he had had some agreement—I remember the word was agreement—with Greenhow with reference to this house, but that as Greenhow had not fulfilled the agreement in the least he was very glad to get rid of it and would sell it to me in the interest of the restoration for exactly what it cost him. Mr. Jackson, however, after I had been talking to him about the matter told me Greenhow had never paid him as much for the house as the house would have brought at a very reasonable rent, and that he was tired of the thing and was glad to get rid of it and would sell it for what it cost."

The correspondence between Dr. Goodwin and Mr. Jackson does not appear in the record, but when questioned in regard to same, Mr. Jackson testified that he had received a letter from Dr. Goodwin relative to the property. From the record this appears:

"Q. What did you reply to him?

"A. I just stated that inasmuch as this man had not fulfilled his agreement with me I felt at liberty to offer him the property at the price it cost me. If it was part of the picture he needed to complete his program he could have it at what it cost me, that was $800.00.

"Q. And you wrote Dr. Goodwin that on account of Greenhow's failure to complete his agreement with you—What agreement?

"A. The agreement to pay $10.00 a month in order that he might have the property, pay the balance at the rate of $10.00 a month. He was to have the property given him when he concluded that purchase. * * *"

"By the court:

"Q. He asked what you told Dr. Goodwin.

"A. I told Dr. Goodwin inasmuch as the man had not completed his contract if he needed the property to complete his picture I would be glad to let him have it at what it cost me."

Forearmed with this knowledge, it was the duty of Dr. Goodwin to make inquiry as to what rights Greenhow was asserting with reference to the property. That duty he failed to perform and by reason of this omission he cannot be regarded in law as a *bona fide* purchaser without notice.

In *Long* v. *Weller's Ex'or*, 29 Gratt. (70 Va.) 347, Burks, J., states the doctrine thus: "Wherever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed his duty."

In *Cordova* v. *Hood*, 17 Wall. 1, 8, 21 L. Ed. 587, we read: "Means of knowledge, with the duty of using them, are, in equity, equivalent to knowledge itself."

Applying the foregoing principles to the case at bar, our conclusion is that the decree appealed from is right, and must be affirmed.

*Affirmed.*