## Sewell, *et al. v.* Holley.

*Bill to Declare a Deed a Mortgage, and to Redeem.*

(Decided November 7, 1914.   66 South. 506.)

1. *Mortgages; Deed as; Bill.*—Where the bill alleged that the transaction originated in a negotiation for a loan, that respondent agreed that if the grantor of complainant would execute a deed to the land, he should have a specific time within which to redeem by paying the debt with interest, and that pursuant to such agreement, such deed was executed, the bill was not fatally defective for failing to sufficiently charge that it was agreed between the parties that the deed should be treated as a mortgage.

2. *Same; Evidence.*—The evidence examined and held to support a finding that the deed from Kelly to Sewell was intended to operate as a mortgage.

3. *Appeal and Error; Evidence; Objection; Failure to Rule.*—The failure of the Chancellor to rule on objections to evidence because he did not deem it expedient to pass specifically on the objections, was harmless, where it did not appear that a consideration of the evidence objected to was necessary to a decree on behalf of the successful party.

4. *Witnesses; Privilege; Confidential Relation; Attorneys.*—Where the attorneys who represented Kelly primarily in a negotiation with a prior mortgagee for the redemption of the property, were employed by Sewell to act for him, he having agreed to make a loan to Kelly in order that Kelly might redeem, taking the deed from him to secure the loan, the evidence of such attorneys were not privileged, in a bill by a subsequent grantee of Kelly's against Sewell and Kelly to have Kelly's deed to Sewell declared a mortgage; the rule being

that where contracting parties, pursuant to a common design, consulted an attorney, each being aware that the attorney is acting for the other also, each waives as against the other, his right to treat the communication as confidential and privileged in asserting his rights under the contract.

APPEAL from Elmore Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by J. M. Holley against N. B. Sewell and others, to declare a deed a mortgage, and to be let in to redeem, Holley being the vendee of the original mortgagor. Decree for complainant and respondents appeal. Affirmed.

WILLIAM H. and J. R. THOMAS, J. A. HOLMES, and H. J. LANCASTER, for appellant.

J. M. HOLLEY, H. R. GOLSON, GEORGE F. SMOOT, and THETFORD, BLAKEY & STRASSBURGER, for appellee.

SAYRE, J.—Complainant (appellee) as assignee of Alexander Kelly, by virtue of the latter's warranty deed to the land in controversy, filed this bill against Kelly and appellant Sewell to declare Kelly's deed to appellant a mortgage and to redeem. Kelly confessed the bill. Complainant had a decree in the court below against both defendants on pleading and proof. Hence this appeal by Sewell.

The decree of the court overruling a demurrer to the bill as last amended is assigned for error. The point taken by the demurrer, to follow its language closely, was that there were no averments in the bill showing or tending to show that the deed was to be treated as a mortgage either by Kelly or Sewell, nor any averments showing or tending to show that both said parties treated or considered said deed as a mortgage. This objection to the bill depends upon a con

struction of paragraph 2, which we here set out in extenso:

"Complainant further shows unto your honor: That said Alexander Kelly, prior to said 2nd day of January, 1911, had , executed and delivered a mortgage to one J. M. Barnett to secure a debt which is set forth in said mortgage. That said mortgage had been transferred by said J. M. Barnett to one T. J. Carling, trustee; that the said T. J. Carling, trustee; had undertaken to foreclose said mortgage, which attempted foreclosure was had· prior to said 2d day of . January, 1911. That during the month of December, 1910, the said N. B. Sewell had offered to lend to said Kelly a sufficient amount of money to redeem the above-described land from the said T. J. Carling, trustee. That the said Sewell agreed to lend the money to said Kelly upon the condition that the said Kelly execute and deliver to him a deed conveying to said Sewell the land which was covered by the mortgage which was executed by said Kelly to said Barnett. Said Sewell agreed that if the said Kelly would so execute the deed conveying said land to said Sewell, he [Sewell] would charge 8 per cent. interest on the money so loaned, and would allow the said Kelly as much time as was necessary for the payment of said debt.

"That in pursuance of the above-mentioned agreement, the said Kelly and his wife, Fannie C. Kelly, did on, to wit, the 2d day of January, 1911, execute a deed to the said N. B. Sewell, a copy of which deed is attached, as 'Exhibit A' to ·the original bill filed in said cause and made a . part hereof. That said deed was consequently delivered to the said N. B. Sewell. The said Sewell furnished the said Kelly with the sum of, to wit, $2,936.36, which was used by said Kelly in redeeming said land from said Carling, trustee, said

sum of money being advanced by said Sewell to said Kelly during, to wit, the month of July, 1911.. That on the day when said money was delivered by said Sewell to said Kelly, said parties made a calculation as the amount of money which was due by said Kelly to said Sewell. That the said parties included in this settlement the above-mentioned sum of $2,936.36, and also certain other sums of money which had been previously loaned by said Sewell at the request and for the benefit of said Kelly. That at the time the said Sewell agreed that the said Kelly should have until the 1st day of October, 1913, to repay him on account of the several sums amounting in the aggregate to $3,-152.81, together with interest at the rate of 8 per cent per annum from October 1, 1911. That all the above-mentioned agreements were in parol. That said Kelly was in possession of said lands on January 2, 1911, and remained in possesion until the filing of this bill."

If it be conceded that the bill wherein it sets forth the basic fact of complainant's right is not a model of careful pleading, it yet complies passably well with the statutory requirement in reference to bills in equity, which is that they "must contain a clear and orderly statement of the facts on which the suit is founded, without prolixity or repetition. * * * The statute has not, however, been construed as in derogation of the cardinal rule, as it has been frequently termed, that the bill must show with accuracy and clearness all matters essential to the complainant's right to relief. These matters must not be made to depend upon inferences, nor will ambiguous averments of them be accepted as sufficient. The averments must be direct and positive, not uncertain and inconclusive." —*Seals v. Robinson*, 75 Ala. 363. Complainant's title should be stated with sufficient certainty and clear-

[Sewell, et al. v. Holley.]

ness to enable the court to see clearly that he has the right, and distinctly to inform the defendant of the grounds upon which the complainant depends for relief.—*Goldsby v. Goldsby,* 67 Ala. 560.

In *Smith v. Smith,* 153 Ala. 504, 45 South. 168, a case of like general character with this, the court said: "Furthermore, to show that a conveyance should operate as a mortgage, it is indispensable that the bill should aver the concurring intention of both parties at the time of the execution of the instrument that it should so operate."

But, of course, the court did not intend to hedge the pleader about with an inescapable form of words. Here the bill shows that the transaction in question originated in a negotiation for a loan, that defendant agreed that if Kelly would execute the deed, he should have a specified time in which to redeem by paying the debt with interest, and that in pursuance of said agreement the deed was executed. Our judgment is that these facts tend to show, and do show, an agreement between the parties that the sum advanced by defendant should constitute an indebtedness for the security of which the deed was executed, and sufficiently answer the language of the demurrer.

Complainant took the depositions of Messrs. Golson, Thetford, and McKenzie, among a number of other witnesses. Defendant objected, among other things, to the use of these depositions on the ground that these witnesses, who were practicing attorneys, had acquired knowledge of the facts while acting as attorneys at law and confidential agents for him. He assigns as error that the chancellor refused to pass on his objections. The chancellor states in his summary of the facts that he did not deem it expedient to pass specifically on these objections because in reaching a con-

clusion he had endeavored to consider only that part of the testimony, which in his opinion was legal, competent, and relevant. It will be seen from this statement that harmful error cannot be predicated of the failure to note specific rulings, unless indeed it appears that a consideration of the testimony in question was necessary to a decree in behalf of complainant. This testimony tends strongly to support Kelly, who testified for the complainant; but his version of the facts had also strong support in the testimony of other witnesses not in the same category, and we are not prepared to say that we would doubt the correctness of the conclusion reached, even though the testimony of these gentlemen should be rejected as incompetent.

But aside from the consideration already stated, we are of opinion that the objections were not well taken. These witnesses represented Kelly primarily in a negotiation with a prior mortgagee for a redemption of the property in controversy. Defendant was interested in that negotiation because he was then negotiating the loan to Kelly which he afterwards made on the security of Kelly's deed to enable him to redeem. Defendant was active in aiding the redemption, Kelly's right being denied by the prior mortgagee, and in this way came into confidential relations, no doubt, with these attorneys. Their testimony, therefore, falls within the rule that where the contracting parties, in pursuance of a common design, consult an attorney in reference to a contemplated contract, each being aware that the attorney is acting for the other also, each thereby waives, as against the other, his right to treat his communications as confidential and privileged in asserting his rights under the contract.—*Parish v. Gates,* 29 Ala. 254, where the reasons for the rule and its exception are well stated.

No critical statement of the voluminous testimony in this case could be made that would not be unprofitably and tediously lengthy. It has had due consideration, and we are constrained to announce our concurrence in the chancellor's finding in support of the bill. We will say, however, in a general way that the transaction in dispute originated, as defendant concedes, in an application for a loan. Defendant let complainant's assignor have a sum sufficient to redeem from the prior mortgagee, plus costs incurred in the redemption suits brought by Kelly. The amount so paid is significant of a loan rather than a purchase. On divers later occasions defendant referred to Kelly's indebtedness to him and of his claim on the land in a manner that indicated his recognition of the defeasible character of his title.

"Loose declarations of trust and casual conversations derogatory of the grantee's title have not been regarded as possessing much probative force in cases like this, even when proved to have been made; while the unsatisfactory and unreliable character of evidence of verbal statements, easy to be misunderstood and difficult to be accurately reproduced, is everywhere recognized by those accustomed to deciding controverted questions of fact, particularly when given long after the event and without motive to impress the conversations upon the memory."—*Reeves v. Abercrombie,* 108 Ala. 544, 19 South. 41.

But some of the statements alluded to were neither loose nor casual—they were quite deliberate. Defendant, or his wife for him, kept a book of accounts, and in it was stated an account with complainant's assignor which showed, as of a date ten months after the deed, the charge of a sum as "paid by N. B. Sewell on land," which we have no doubt is to be explained

as made up of the amount so paid, plus interest to the date of the charge. This account showed other charges of sums advanced during the next succeeding year, on the idea, perhaps, that they, too, were to be charged against the land; but whether so to be charged or not is of no consequence. It showed also items of credit by rents derived from the land which remained in Kelly's possesion virtually. About 12 months after the date of the charge for land defendant had the cashier of his bank to add up the figures of his account against Kelly, which he called off from a book. He called one item which can be explained only on the hypothesis that it represented the amount involved in the transaction in question, and the only reasonable explanation of the account as a whole is that it represented current items of debit and credit. There were other admissions or recognitions of Kelly's right, some loosely made on trivial occasions, some having the character of deliberate and reasoned utterances. Again, when appellee demanded a redemption and made a tender, defendant temporized, instead of denying the right asserted. Again, the weight of the evidence shows that the land is, and was at the time of this transaction, worth considerably more than the consideration named in the instrument of conveyance—in the neighborhood of twice as much. These circumstances, in connection with the testimony going more immediately and explicitly to show that, at the time of the execution of the instrument under consideration, the parties were mutually agreed that complainant's assignor should become defendant's debtor in the sum paid, and that the title to the land should be taken as securiiy, have led to the conclusion that complainant has sustained that burden of proving his case by clear and convincing testimony which the law of such cases had wisely

[Sewell, et al. v. Holley.]

put upon him, and that the chancellor's decree is correct.—*Winn v. Fitzwater*, 151 Ala. 117, 44 South. 97.

Defendant has offered his denials, explanations, corroborations. They impress us as being for the most part lame and unprofitable. As the chancellor observed in his opinion: "The testimony of respondent Sewell is so completely at variance with much record evidence in the case, and his explanations of such variances are so entirely unsatisfactory, and he is contradicted as to material declarations by so many apparently reputable witnesses, that the court is unable to accept his version of the transaction. Considering his testimony alone, it impresses the court that his present contention and construction of the transaction between himself and respondent Kelly, under which Kelly conveyed him the lands involved in this suit, is an afterthought, and that it never occurred to him to make such claim and contention until after he learned that Kelly had sold the lands to complainant in this suit."

We will not dwell upon the testimony tending to impeach the veracity of defendant and some of his witnesses, nor the countervailing testimony offered by defendant. Suffice it to say of this part of the evidence that its net result has not added to the burden placed by law upon complainant. We are satisfied with the decree, and it will be affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and DE GRAFFEN-RIED, JJ., concur.