# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## CARRIE A. BRAME AND JOHN ARTHUR BRAME v. WILLIAM H. READ, ET ALS.

### June 14, 1923.

1. TRUSTS AND TRUSTEES—*Parol Trust in Land—Evidence Sufficient to Establish.*—An express trust in land may be set up by parol, but in order to establish such a trust the declaration of trust must be unequivocal and explicit, and the evidence thereof must be clear and convincing.

2. TRUSTS AND TRUSTEES—*Parol Trust in Land—Evidence Sufficient to Establish—Case at Bar.*—In the instant case a father conveyed land to his daughter's husband, reciting a consideration of natural love and affection for his daughter, and a debt due by him to his daughter. It was contended that the husband took the legal title to the land subject to an express trust in favor of his wife. Several witnesses testified that the husband spoke of the land as his wife's, and that it was to go to his wife's heirs. On the other hand, a witness testified that the husband had told him that his father-in-law didn't believe in women owning land, and "deeded the land to me—it is mine." There were contracts, conveyances and deeds of trust executed by the husband concerning the land, in which no mention was made of the wife as having an interest. The land was listed for taxation in the name of the husband "and wife."

   *Held:* That evidence to establish a trust in favor of the wife fell far short of being clear and convincing.

3. REAL PROPERTY—*Conveyances—Unexecuted Intention.*—Property was conveyed to a husband by his wife's father. The evidence indicated that it was his wife's desire that this property should go to her nephew and her niece after the husband's death. This purpose, however, was not executed by the husband, and title to real estate cannot be transferred by an unexecuted intention.

4. TRUSTS AND TRUSTEES—*Parol Trust in Land—Evidence Sufficient to Establish—Case at Bar.*—In the instant case there was no evidence that the grantor in a deed conveying property to a son-in-law made any declaration of trust in any way limiting or controlling the conveyance, which was absolute on its face. Such a declaration of trust, to be effective, must be unequivocal and explicit, and a cotemporaneous declaration of the grantor showed that he purposely

conveyed it to the husband, and that he fully understood that the effect of his conveyance was to vest the legal and beneficial title in his grantee.

*Held:*   That there was no trust in favor of the wife.

5.   TRUSTS AND TRUSTEES—*Parol Trust in Land—Evidence Sufficient to Establish—Parol Conveyance of Land—Case at Bar.*—Declarations of a husband, subsequent to the conveyance of land to him by his father-in-law, tending to show that he considered the land as his wife's and that he had only a life interest in it, would be insufficient to establish an equitable title in his wife.   While his declarations would be held significant in support of an express trust which had been impressed upon the land by the grantor when the conveyance was made, they are insufficient of themselves to create such a trust which was not so impressed by the grantor at the time of the conveyance.   To permit such subsequent declarations to have such effect would be to convey an estate in land by parol, which is expressly prohibited by statute.

6.   WILLS—*Estoppel—Election—Case at Bar.*—In the instant case a father-in-law deeded land absolutely to his daughter's husband.   The will of the daughter stated that she desired that her husband should have the use of this property during his life and at his death she desired it to go to a nephew and niece.   The will also made a bequest of personalty to her husband.   This will was never probated, but was found among the husband's papers at his death.   The husband received the personalty but there was nothing to show whether he claimed it as his wife's legatee, or as her sole distributee.

*Held:*   That it was not shown that the husband had elected to take the bequest to him, thereby waiving his claim to the land except in conformity with the will.

7.   ESTOPPEL—*Election—Person Bound to Elect Continuing in Possession of Both Properties.*—Where a person, bound to elect between two properties, continues in possession, or enjoyment, or receipt of the rents and profits of both, without being called upon by the other party interested to elect, this conduct indicates no intention of taking one and rejecting the other, and does not therefore amount to an election.

Appeal from a decree of the Circuit Court of Mecklenburg county.   Decree for defendants.   Complainants appeal.

*Affirmed.*

The opinion states the case.

*E. P. Buford* and *G. M. Raney,* for the appellants.

*S. S. P. Patteson* and *Irby Turnbull,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The appellants, claiming under the will of Martha J. Read, filed their bill against the appellees, in which they sought to establish their title as equitable owners of a tract of land which the defendants claim as the heirs at law of Charles F. Read. The legal title is clearly in the appellees under a deed, dated November 18, 1876, whereby Arthur H. Davis, the father of Martha H. Read, reciting a consideration of natural love and affection for his daughter, and $500 due by him to his daughter for money received from her grandfather's estate, conveyed the land to Charles F. Read, her husband. The claim of the appellants is based upon the will of Martha J. Read, dated April 19, 1910, reading, "I desire that my husband, Chas. F. Read, shall have the use of the farm upon which we are now living during his life, and at his death, I desire it to go to my niece, Carrie A. Brame, and John Arthur Brame equally. I also give to my husband, Chas. F. Read, all interest in my sister's (Mary O. Davis) estate that may be coming to me in her personal property."

The case was heard upon the bill, answer and depositions filed by the parties. The trial court adjudged that the appellees were the legal and equitable owners of the property, and dismissed the bill. The appellants are here contending that this decree is erroneous.

[1] One contention is that Charles F. Read took the legal title to the land subject to an express trust in favor of his wife. That an express trust in land may be set up by parol is perfectly well settled in this State. *Young* v. *Holland,* 117 Va. 433, 84 S. E. 637; *Taylor* v. *Delaney,* 118 Va. 203, 86 S. E. 831; *Powers* v. *Long,* 131

Va. 284, 108 S. E. 664; *Page* v. *Page*, 132 Va. 63, 110
S. E. 370. It is equally true, however, that in order to
establish such a trust the declaration must be unequivo-
cal and explicit, and the evidence thereof must be clear
and convincing. In most cases, as in this, there is no
longer any reason for debate as to the law, but the ques-
tion is one of fact.

[2–4] The facts here relied upon to establish the
trust consist of the circumstances stated, and the testi-
mony of several witnesses to the effect that Charles F.
Read spoke of the land as his wife's land, as land that
he only had a life interest in, and that it was Mr.
Brame's children's land, and would go to these children
when he died. One witness testified that he (Read)
said that he told his wife not to convey it to him but to
let it go back to the house it came from. On the other
hand two witnesses, one of them a justice of the peace,
who lived on an adjoining farm, testified that on one
occasion Read was asked whether his land didn't be-
long to his wife, and that his reply was, "No, sir. Davis
didn't believe in women owning land, and deeded the
land to me—it is mine;" that when a contract for the
sale of timber on the land was drawn, the name of
Read's wife was not mentioned either in the contract
or in the cotemporaneous conversation; that he had
always heard it called Mr. Read's land; that he never
spoke in but one way to him about the land, and that
no question about the title or ownership of the timber
on the land was raised or suggested. Read made similar
statements as to the ownership of the land to another
witness. In addition to selling the timber upon the
land and taking the proceeds thereof, he on three sepa-
rate occasions borrowed money and executed deeds of
trust securing such indebtedness, recited to be his own.
In two of these deeds it was expressly provided that in

case of a sale the surplus proceeds should be paid to him, or to his order, and in another that such residue should be "returned to the party of the first part." In addition to this there was a conveyance of four acres of the property, in which there was no suggestion that the land belonged to his wife. While one of the witnesses for the plaintiffs who had been a commissioner of the revenue testified that the land was listed for taxation in the name of "Pattie J. Read," it was shown conclusively that it was never so listed, but was listed in the names of "Charles F. Read and wife."

It is unnecessary to recite the evidence more in detail. To do so would merely accentuate its unconvincing character. A consideration thereof leads to the conclusion that the appellants have failed to sustain the burden cast upon them by law. The testimony relied on, when considered in connection with the testimony and the circumstances relied upon by the appellees, falls far short of being clear, cogent and convincing. It doubtless indicates that because the property was conveyed to Charles F. Read by his wife's father, it was her desire and his purpose to have it go to the appellants after his death. This purpose, however, was not executed by Read, and the title to real estate cannot be transferred by an unexecuted intention. There is no evidence that the grantor in the deed conveying the property to Charles F. Read made any declaration of trust in any way limiting or controlling this conveyance, which is absolute on its face. Such a declaration of a trust, to be effective, must be unequivocal and explicit. The only evidence appearing in this case contradicts such suggestion and excludes such an inference. He purposely conveyed it to the husband, and there is no reason to doubt from his cotemporaneous declaration that he fully understood that the effect of his con-

veyance was to vest the legal and beneficial title in his grantee, Charles F. Read.

[5] Even if the alleged declarations of Charles F. Read subsequent to the conveyance were established by convincing evidence, these alone would be insufficient to establish an equitable title in his wife. While his declarations would be held significant in support of an express trust which had been impressed upon the land by the grantor when the conveyance was made, they are insufficient of themselves to create such a trust which was not so impressed by the grantor at the time of the conveyance. To permit such subsequent declarations to have such effect would be to convey an estate in land by parol, which is expressly prohibited by statute. *Jesser* v. *Armentrout's Ex'r,* 100 Va. 666, 42 S. E. 681.

[6] The appellants claim, also, that even conceding their failure to establish their allegation that Charles F. Read held the legal title to the property as trustee and for the benefit of his wife, Martha J. Read, as its true owner, they are nevertheless entitled to prevail here under the equitable doctrine of election. This contention is based upon the fact that the will of Martha J. Read devises this property, after the death of her husband, to these appellants, and that it also bequeathed her interest in her sister's estate to her husband. They claim that Charles F. Read elected to take the bequest to him, thereby waiving his claim to the land, except in conformity with the will—that is, during his life—so that after his death, by reason of such election, the property became theirs as devisees under the will, and hence is not inherited by the appellees as the heirs at law of Charles F. Read. If it were shown that Charles F. Read ever made such election, it would be necessary to examine the doctrine and de-

termine its precise application to the peculiar circumstances here presented.    The will of Martha J. Read was made April 19, 1910.    Though she died many years previously, it was not admitted to probate until November 25, 1919.    This will was among the papers of Charles F. Read after his death, and was not witnessed.    There is no explanation of the failure of Charles F. Read to have this will probated during his lifetime.    It certainly did not prove itself, and its validity depended upon the ability to show that it was wholly in the handwriting of the testatrix.    The fact that it was not so offered by him for probate during his lifetime, indicates that he did not claim thereunder.    It is shown that he received $118.80 from A. F. Brame, the father of these appellants, who was the administrator of Mary O. Davis, his wife's sister.    It is this fund arising from her sister's estate which is given to Charles F. Read by his wife's will.    Two of the receipts for these payments, aggregating $74.59, are dated 1910, and the other for $44.21 in 1918.    There is nothing, however, in these receipts to indicate whether he claimed and received these funds as his wife's legatee, or as her sole distributee as if she had died intestate.    Indeed, as the will had not been proved, the presumption is that he claimed as distributee and that he had never been called upon to make such an election.

[7] This is said in 1 Pom. Eq. (4th ed.) 515:    "Where a person, bound to elect between two properties, continues in possession, or enjoyment, or receipt of the rents and profits of both, without being called upon by the other party interested to elect, this conduct indicates no intention of taking one and rejecting the other, and does not therefore amount to an election."    This proposition appears to be well supported by authority. *Waggoner* v. *Waggoner,* 111 Va. 325, 68 S. E. 990, 30 L. R. A. (N. S.) 644.

This question, then, as presented here, is also a question of fact. We find no sufficient evidence in the record to show that Charles F. Read ever claimed or asserted any right to the legacy bequeathed to him by the will of his wife; indeed, his failure to offer the will for probate is a clear indication that he did not claim thereunder. While he could not be permitted to trifle with a court of equity and by suppressing a will to evade the application of the doctrine of election, he cannot be held to have exercised his right to elect in the absence of any evidence showing that he has done so. It would, indeed, be strange if, with full information as to the value of the farm containing 215 acres, as compared with the insignificant sum received from Brame, the administrator, he had made the election which is here claimed. It would require convincing testimony, which is not produced, and his action, so far from indicating that he ever claimed under his wife's will, suggests that he considered it invalid and inoperative. While doubtless true that he intended the land to be returned to his wife's relatives at his death, he has failed either to convey or devise it to them, and this being so it belongs to his heirs at law.

We find no error in the decree appealed from.

*Affirmed.*