# Richmond

## VIRGINIA TRUST COMPANY, ET ALS. V. RUBY LEE MINAR, ET ALS.

March 2, 1942.

Record No. 2441.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*John S. Barbour, Charles Pickett* and *James Keith*, for the appellants.

*Basil D. Boteler* (Washington, D. C.), *John C. Mackall, Harry R. Thomas, Albert V. Bryan, Robert Button* and *Lett, Murray & Ford*, for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

This appeal brings under review a decree entered in a chancery suit instituted by Virginia Trust Company and John S. Barbour, Executors of Presley M. Rixey, deceased, against Ruby Lee Minar, Ruby Lee Minar, Inc., J. G. Hiden, Trustee, Harry R. Thomas, Trustee, D. S. Mackall, Trustee, Joseph B. Deming, Trustee, Glen E. Eakin, Trustee, James Sherier, Trustee, The Peoples State Bank of Cherrydale, Trustee, John S. Barbour, Trustee, and the estate of P. W. Hiden.

The record discloses that the Minars (meaning Ruby Lee Minar, John M. Minar and Ruby Lee Minar, Incorporated), were extensive real estate operators in Arlington and Fairfax counties, Virginia. In June, 1923, in the course of their real estate operations they purchased from Presley M. Rixey a tract of land situated in Arlington county, for the sum of $161,000, and executed a deed of trust to John S. Barbour, Trustee, to secure the purchase price. Default having been made in the payment of the purchase money notes, this deed of trust was foreclosed and a deficiency judgment was recovered against the Minars in the sum of $131,000. In the year 1926, the Minars purchased from Presley M. Rixey a tract of land known as "The Sleepy Hollow" tract, situated in Fairfax county, containing 34.23 acres. To secure the purchase price, they executed a deed of trust to J. G. Hiden, Trustee.

At the time of the purchase of these tracts of land it was generally understood between the parties that the tracts would be devoted to suburban development, sub-divisions and re-

sale, as lots. The Minars, in due time, divided these tracts into lots and proceeded to sell them to numerous purchasers who signed contracts of purchase and executed instalment notes for the purchase price. These contracts of purchase were not recorded, but in order to protect the purchasers and the subsequent assignees of the purchase money notes, the Minars conveyed the lots so sold to the defendant trustees under a trust clause reading as follows:

"To sell, lease, encumber or convey the said land, or any part thereof, or any interest therein, at such time and at such price and to such person or persons as the trustees may ascertain are entitled to have conveyed a lot or parcel, upon such conditions as to the trustees may seem advantageous and proper without any liability on any purchaser or purchasers, of any part thereof, or any interest therein, to see to the application of the purchase money; and to carry out the provisions of this trust the said trustees are authorized, empowered and directed to execute, acknowledge and deliver any deed, deed of trust, lease, encumbrance or lease of said property as though they were the owners in fee simple."

These various deeds of trust were duly recorded. Although default occurred in the payment of the purchase price for the "Sleepy Hollow" tract, the deed of trust was not foreclosed.

At the January Rules, 1937, the executors of Rixey filed their bill of complaint, as lien creditors of the Minars, to subject the alleged beneficial interest of the Minars in the land purchased from Presley M. Rixey. The basis of complainants' claim is that the judgment lien obtained against the Minars is a lien against the beneficial interest of the Minars in the aforesaid tracts which were conveyed by them to the defendant trustees. It is alleged that the various trusts were void for uncertainty, were without consideration and executed for the purpose of hindering, delaying and defrauding the creditors of the Minars. The main prayer is that the deeds of trust be set aside and that the land be subjected to the liens thereon.

The appellees filed their respective answers, denying that the judgment of appellants was a lien upon the property pur-

chased by them from the Minars. No question was raised in the answers as to the deed of trust lien on the "Sleepy Hollow" tract of land.

Issue was joined upon the bill and answers, and over the specific objection of Thomas, Sherier and Eakin, Trustees, the cause was referred to a commissioner in chancery, to ascertain and report to the court as follows:

"1. All real estate upon which the plaintiff's judgment against Ruby Lee Minar and Ruby Lee Minar, Inc., constitutes a lien, together with the location, quantity and value of such piece of real estate, and in whose name the several parcels now stand, and the state of the title of record in respect to each.

"2. Whether the said plaintiff's judgment constitutes a lien upon any of the real estate conveyed to Ruby Lee Minar and/or Ruby Lee Minar, Inc., to J. G. Hiden, Trustee; to Harry R. Thomas and D. S. Mackall, Trustee; to Harry R. Thomas and Glen E. Eakin, Trustee; to Harry R. Thomas and James Sherier, Trustee; to the Peoples State Bank of Cherrydale, Trustee; or on any of the property conveyed by Presley M. Rixey and wife to John S. Barbour, Trustee, and if so the extent of such liens; the names of the present holders of the legal title thereto, and the liens on said properties with their priorities.

"3. An account of the delinquent taxes, if any, on any of said real estate.

"4. The commissioner is also authorized and directed to convene all lien creditors of the said Ruby Lee Minar and Ruby Lee Minar, Inc., and all claimants to any of said property, and require them to appear before him and prove any liens or other claims that may be asserted against any of said real estate, upon which the plaintiff's judgment constitutes a lien.

"5. Any other matter or thing in dispute under the pleadings in this cause with his conclusions in respect thereto proper to be considered by the court in respect to said property which any party in interest may request and the Commissioner thinks should be reported prior to final decree."

The only evidence offered by the complainants, in the

hearing before the Commissioner, was the "Sleepy Hollow" note and the deficiency judgment.

Though the evidence taken is somewhat voluminous, it clearly appears that the deeds of trust under attack were executed and recorded previous to the procurement of appellants' judgment and previous to any default of the Minars.

In due season the Commissioner returned his report and held that the eight deeds of trust were invalid; that the beneficial title of the Minars did not pass under the terms of the deeds of trust, and therefore, the complainants' judgment was a lien on all the lots conveyed by the respective deeds of trust superior to the rights of the lot purchasers and to the rights of the holders of the notes.

The appellees excepted to the report of the commissioner, on the ground that the eight deeds of trust set up valid express trusts for the benefit of the purchasers and the note holders. The exception was sustained by this pertinent part of the decree:

" * * * that the purposes and objects of said trusts created by said deeds *in* trust were, and are, for said trustees to have and to hold the said lots or parcels of land for the use and benefit of the persons who had theretofore purchased the same under contracts of sale from Ruby Lee Minar or Ruby Lee Minar, Inc., each purchaser giving his note for the unpaid balance of the purchase price, and for the use and benefit of the persons to whom said notes (with the contracts) were pledged by Ruby Lee Minar and Ruby Lee Minar, Inc., for loans, with power and directions to convey to each purchaser, upon his compliance with his contract of purchase by the payment of his purchase money note, the lot or parcel of ground so purchased by him, and upon default of such purchaser in complying with said contract, to sell such lot or parcel of ground, and to apply the proceeds of sale to the payment of the note given as aforesaid for such purchase price, after deducting the expenses of sale."

From this decree appellants have been granted an appeal.

It is the contention of appellants that the deeds of trust were void for indefiniteness and that the court erred in per-

mitting the introduction of parol evidence to explain and amplify the said trust deeds.

While it may be argued that the language employed in the deeds of trust under review is not as explicit as it should be, it plainly appears that the Minars intended to divest themselves of both the legal and equitable title in the land conveyed. It is evident from the language of the instruments that the purpose of the trust was to protect the purchaser of a lot and to protect the pledgee of the purchase money notes, and upon payment of the full purchase price, to have the trustee (not the Minars), convey to the purchaser or his grantee the lot or parcel of land contracted for. Therefore, it follows that the beneficiaries contemplated are the purchasers of the lots who have paid in full the purchase price and the pledgees of the unpaid notes. If there be any ambiguity in the language of the trust deeds, the parol evidence introduced clarifies it. However, it is argued that parol evidence is inadmissible to add to or explain the provisions of the trust deed. This contention is untenable for several reasons.

The introduction of parol evidence was in direct response to the prayer of the bill "that said trustees be required to settle their accounts and show all sums received under said several trusts and account for any balance in their hands, and required to disclose, but not under oath, the real or supposed beneficiaries of the several trusts aforesaid and how they were so declared * * *"

That the commissioner construed this language as calling for parol evidence to amplify the trust deeds is evidenced by his action in directing, without objection, these interrogatories to appellees:

"7. For whom did you understand from the very beginning of the trusteeship under the deed in trust you were holding the title to the lots conveyed thereunder?

"8. For whom did you understand from the very beginning of the trusteeship under the deed of trust were you to hold the funds to be derived from the payments upon the lots?

"9. I would like to have you give me details of conversa-

tions or instructions and from whom, which gave you this understanding as to holding of lots or funds therefrom."

It further appears from the record that, during the progress of the hearing before the commissioner, counsel for appellants used this language: "I want the trustees to state what their trusts are and be done with it. * * * We would like to have the statements in detail as to who are the beneficiaries under each of those trusts and the extent of the interest secured by it and a detailed statement of the notes evidencing that claim and what lots they are claiming against."

In compliance with these demands, appellees introduced as witnesses Thomas, Deming and Evans, Trustees, who furnished the desired information relative to their trusteeship, by showing the purposes of the trust deeds in general, by giving the names and addresses of all the *cestuis que trustent* and by giving the names of the note holders and the purchasers of the various lots.

Even though no demand had been made upon appellees, as above stated, we are of opinion that the introduction of the parol evidence in question was admissible.

In *Young* v. *Holland, et als.*, 117 Va. 433, 84 S. E. 637, it was held:

"An express trust in real estate may be created and established by parol in this State, but the declaration must be unequivocal and explicit, and the evidence clear and convincing.

"As an oral declaration of trust in real estate is lawful and enforceable in this State, and *can only be proved by oral evidence*, it is not within the operation of the rule forbidding the admission of parol evidence to vary, alter or contradict the terms of a valid written instrument."

This holding was reaffirmed in *Jackson* v. *Greenhow*, 155 Va. 758, 156 S. E. 377, the court saying:

"There are no novel questions of law involved in this litigation. Since the decision of *Young* v. *Holland*, 117 Va. 435, it has been consistently held by this court that, since Virginia has never adopted the seventh section of the English statute of frauds, an *express trust in real estate could be created and established by parol*."

See also, *In re Henderson*, 142 F. 568, and *Higginbotham v. Boggs*, 234 F. 253.

In the petition for appeal, and in the various briefs filed by counsel, elaborate discussions are entered into involving the questions of (1) hindering and delaying creditors; (2) the applicability of the registry statutes, sections 5192 and 5194 of the Code; (3) the refusal of the court to further administer the various trusts; (4) the refusal of the court to recommit the report to ascertain the beneficiaries, etc.

In view of our conclusion that the chancellor correctly construed the terms of the trust deeds involved, we do not deem it necessary to enter upon a *seriatim* discussion of these assignments of error. Suffice it to say that at the time appellants obtained their judgment the Minars had parted with all interest in the land conveyed to the various trustees and the recordation of the eight deeds of trust was in conformity with the provisions of the registry statutes and in lieu of the necessity of recording the contracts of sales to the various lot purchasers.

There are, however, other phases of the case we deem it necessary to consider.

The first is the contention of appellants that the court erred in decreeing a sale, before the conclusion of the suit, of certain land conveyed by Ruby Lee Minar, Inc., to Harry R. Thomas, Trustee, to secure an indebtedness due to the estate of P. W. Hiden, deceased. This deed of trust has no connection with the eight deeds of trust heretofore adverted to.

During the pendency of the present suit counsel for the estate of Hiden appeared in open court and stated the existence of the trust deed, a default in payment and requested that the trustee be permitted to execute the trust without awaiting the final decision of the court on the controverted matters. The court granted this request and decreed a sale of the land covered by the deed of trust pursuant to the terms thereof.

This assignment of error is concluded against appellants by the decisions of this court in *Armentrout's Ex'rs* v.

*Gibbons,* 30 Gratt. (71 Va.) 632, and in *New York Life Ins. Co.* v. *Kennedy,* 146 Va. 197, 135 S. E. 882.

■ Appellees assign as cross-error the action of the chancellor in refusing to allow appropriate fees to their counsel for conducting their defense. All that counsel did was to represent their clients in a suit instituted against them. There is no merit in this assignment of error.

Upon the whole case, we are of opinion there is no error in the decree complained of and it will be affirmed.

*Affirmed.*