# Richmond

## Mary W. Ingles v. Winnie S. Greear, et als.

October 11, 1943.

Record No. 2641.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*J. S. Andrews* and *George C. Peery,* for the appellant.

*Farrier & Farrier* and *Chester J. Stafford,* for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

At Rules held on the first Monday in May, 1940, Winnie S. Greear, et als., appellees, filed in the Circuit Court of Giles county their bill of complaint against Mary W. Ingles, et als. The object of the suit was to set up an express trust, by parol, in favor of appellees, in a certain residence property located in the town of Pearisburg, Virginia, and formerly owned by Mary C. Painter.

The case was heard upon the bill, answer and depositions filed by the parties.

The prayer of the bill, that the court, by a proper decree, set up and establish a trust in the aforesaid property in favor of appellees, was granted and a decree was entered establishing said express trust. From that decree this appeal was allowed.

No question of law is involved in the case, for the reason that since the decision of *Young* v. *Holland,* 117 Va. 433, 84 S. E. 637, it has been the settled rule in this Commonwealth that an express trust in real estate may be created and established by parol. See also *Fleenor* v. *Hensley,* 121 Va. 367, 93 S. E. 582; *Hook* v. *Hook,* 126 Va. 249, 101 S. E. 223; *Brame* v. *Read,* 136 Va. 219, 118 S. E. 117; *Hunter* v. *Bane,* 153 Va. 165, 149 S. E. 467; and *Jackson* v. *Greenhow,* 155 Va. 758, 156 S. E. 377.

Since no question of law is involved, we must look to the facts, as disclosed by the depositions of the witnesses, in order to arrive at a correct solution.

Before appellees can prevail, the burden is upon them to establish by explicit, clear and convincing evidence that the declaration of trust relied upon is unequivocal. *Brame* v. *Read, supra; Bane* v. *Hunter, supra.*

These facts are uncontroverted: Prior to July 26, 1940, Mary C. Painter was the fee simple owner of the Pearisburg property. To preserve the property as a home, it became necessary to make some satisfactory disposition of the same in order to discharge the indebtedness against it. By deed dated July 26, 1934, Mary C. Painter conveyed this property to her daughter, Belle P. Woolwine, who was the mother of Mary W. Ingles, the deed reciting a cash consideration of $2,000. In addition to this sum, the record discloses that Belle P. Woolwine paid the sum of $400 in back taxes and approximately the sum of $500 for notes due by Mrs. Painter and her family. Subsequent to the date of this conveyance, Belle P. Woolwine took possession of the property and paid the accrued taxes and all bills for repairs. By deed dated September 2, 1939, Belle P. Woolwine con-

veyed the home property to her daughter, Mary W. Ingles, who has remained in undisturbed possession thereof until the institution of this suit.

It is the contention of appellees that the parol trust was established at a conference held between Belle P. Woolwine and Winnie S. Greear, in the presence of J. L. Dillow, an attorney at law. It is alleged that at the time of this conference Belle P. Woolwine agreed that "she would provide the money and take a deed to the property and hold it for the benefit of her daughter, Mrs. Ingles, and Mrs. Greear, who was the daughter of her deceased sister, and the children of Isaac and Cecil Painter, and in the future if and when they could sell the property to advantage, the proceeds of it would be for the benefit of those persons."

To sustain their contention appellees introduced four witnesses who testified that Belle P. Woolwine stated to them at various times that she held the property in trust.

On the other hand, appellants introduced eight witnesses who testified that Belle P. Woolwine, at various times, stated to them that she was the owner of the property in fee simple, and, in effect, denied the trust.

In the opinion of the trial court, filed with the record, this is said: "In the volume of testimony taken there are beyond doubt *inconsistencies* and serious contradictions, and a good many things that cast doubt on the accuracy of some of the testimony." With this statement we are in thorough accord.

The rule that evidence of this character (especially when founded upon alleged statements made by a person years prior to the controversy), is lacking in probative force, is firmly entrenched in our jurisprudence.

In *Hunter* v. *Bane*, 153 Va. 165, 172, 149 S. E. 467, we said:

"In *Sewell* v. *Holley*, 189 Ala. 121, 66 So. 506, 508, it is said: 'Loose declarations of trust and casual conversation derogatory of the grantee's title, have not been regarded as possessing much probative force in cases like this, even when proven to have been made; while the unsatisfactory

and unreliable character of evidence of verbal statements easy to be misunderstood and difficult to be accurately reproduced, is everywhere recognized by those accustomed to deciding controverted questions of fact, particularly when given long after the event and without motive to impress the conversation upon the memory.' "

It therefore becomes unnecessary to discuss in detail the evidence of these numerous witnesses.

In the opinion of the court this is also said:

"It is correctly stated in defendant's brief 'that the contention of complainants that the property was held by Mrs. Woolwine in trust must in the main rest upon the evidence of Mrs. Greear and J. L. Dillow.' "

In that conclusion we concur.

The crux of Mrs. Greear's evidence is, that Belle P. Woolwine said she would hold the property in trust until it was sold and then the proceeds would be divided among those entitled thereto. It is admitted by Mrs. Greear that she permitted Mrs. Woolwine to take possession of the property and to collect rent for it; that for six years she did not once make any claim to the property, either to Mrs. Woolwine or her grantee, Mrs. Ingles; that she assumed no liability for herself or the other alleged beneficiaries in case the property should depreciate in value; and that she waited until after the death of Mrs. Woolwine to assert her claim. In other words, the beneficiaries were to reap all the benefits, if any, and Mrs. Woolwine was to bear all the burdens, if any.

This situation of itself bears the stamp of inconsistency and is contrary to human experience. It therefore follows, as a corollary, that since Mrs. Woolwine is dead, the evidence of Mrs. Greear must, under the provisions of section 6209 of the Code, be corroborated. The only offer of corroborative evidence as to what occurred at the conference is that of J. L. Dillow. That Mrs. Woolwine was not a scheming individual who would deliberately take advantage of her relatives, is found in the evidence of

Dillow, who testified that "Mrs. Woolwine was a very outstanding person and one held in very high regard * * ."

Upon his examination in chief, J. L. Dillow made this statement:

"*As best I can remember*, I explained to Mrs. Greear and Mrs. Woolwine that to pay off the Strader deed of trust, or to take an assignment of it, would not protect the property from other debts that might be created in the future by Mrs. Painter, except to the extent of the deed of trust, which I thought was correct. They seemed to be interested in protecting the property from further debts made by Mrs. Painter for her sons. Mrs. Woolwine stated that she could and would provide the money with which to discharge the Buchanan or Strader debt. The question of the deed arose. *While I cannot state the exact conversation of course,* but the substance of it was that she would provide the money and take a deed to the property and hold it for the benefit of her daughter, Mrs. Ingles, and Mrs. Greear, who was the daughter of her deceased sister, and the children of Isaac and Cecil Painter, and in the future if and when they could sell the property to advantage that the proceeds of it would be for the benefit of those persons. The impression that I got from their conversations and the agreement that they had was, that that's what they wanted to do. I do not know who wrote the deed, and I don't know when it was written, except from the records that I have seen since." (Italics supplied).

The use of the expression "As best I can remember" demonstrates the uncertainty of Dillow's recollection after the lapse of years. While we may concede the *bona fides* of Mr. Dillow's action, there is in the record such a palpable contradiction of his verbal statement that to hold that his evidence is explicit, clear and convincing is impossible.

In January, 1939, Belle P. Woolwine applied to the Bank of Narrows, Virginia, for a loan of $600.

Mr. Dillow testified that for many years he was counsel for bank and as said counsel he had examined the title to the Belle P. Woolwine property now in controversy, and,

on January 4, 1939, he made this report to his client, the First National Bank:

"January 4, 1939.
"First National Bank of Narrows
"Narrows, Virginia

"Re: Title Report on lands of Belle P. Woolwine—
Your Loan, January 4, 1939.

"Gentlemen:

"I have made an examination of the records in the Clerk's Office of the Circuit Court of Giles County, Virginia, concerning the title to lands of Mrs. Belle P. Woolwine, situated in the town of Pearisburg, Giles County, Virginia, and hand you the following report.

"From an examination of said records, I find that Mrs. Belle P. Woolwine is the owner of certain lands in the town of Pearisburg, Giles County, Virginia, designated as part of lot No. 28, which lands are situated on Main Street in said town and are the same lands conveyed unto the said Belle P. Woolwine by Mary C. Painter (widow), under a deed dated July 26, 1934, and of record in said Clerk's Office in Deed Book No. 50 at page 392.

"I do not find of record any liens against the said lands and I am of the opinion that Mrs. Belle P. Woolwine has a good and marketable fee simple title to the said lands, which are fully described in your deed of trust.

"From my examination, I am of the opinion that your deed of trust dated January 4, 1939, from Belle P. Woolwine (widow), to J. L. Dillow, Trustee, when properly recorded, in the Clerk's Office of the Circuit Court of Giles County, Virginia, will constitute a binding and valid first lien upon the lands therein described.

"Yours very truly,

J. L. Dillow
J. Livingstone Dillow."

JLD:gs

In conformity with this certificate of its counsel, the bank made the loan and Mr. Dillow, who prepared the deed of trust securing the loan, named himself as trustee.

In commenting upon this phase of the case, the trial court said: "Mr. Dillow's explanation of this is that he based his opinion on the records, which is not, at best, a complete explanation."

The glaring fact that Mr. Dillow did not recall, when he advised his client to lend money on the Woolwine property, that Mrs. Woolwine had, in his presence, created an express trust upon same in favor of Winnie S. Greear and others, does not, in our opinion, fortify his recollection of an event which occurred in the year 1934.

In support of their contention that no agreement was made by Belle P. Woolwine to establish a trust in favor of appellees, Mary W. Ingles and her husband Harvey Ingles, who is superintendent of the Stonega Coal and Coke Company, testified that in a conversation with J. L. Dillow, in July, 1937, he stated to them that Mrs. Greear tried to get him "to make a statement that she and Mrs. Woolwine were going to buy the property together and he told her she was crazy, that she never mentioned that to him before, that he had never heard of it before. * * * He also said that in his opinion Mrs. Woolwine's deed to that property was as good as gold."

Mr. Dillow denied emphatically that such a conversation took place. Granted that these three parties are of equal credibility, then the burden of adducing convincing evidence has not been borne by appellees.

It is argued by counsel for appellees that the price paid by Belle P. Woolwine was grossly inadequate. This may be conceded but that fact throws little light upon the controversy. On one side we have a mother making a conveyance to her daughter who is desirous of saving for her a home in which to pass her declining years and who, in fact, cared for her for two years after the conveyance. On the other hand, we have the appellees who, as the record discloses, never assumed any burdens in regard to the care and keep-

ing of Mrs. Painter, seeking to establish a parol trust in their favor.

There are several significant facts appearing in the record which negative the idea of the creation of a trust. These may be thus summarized: The deed from Mary C. Painter to Belle P. Woolwine, which was drawn by a competent attorney, conveys the property in fee simple; appellees waited for six years and until the death of Belle P. Woolwine before making any attempt to set up an express trust in the property; and, finally, the evidence of K. S. French, who took Mrs. Painter's acknowledgment to the deed, that he told Mrs. Painter the writing was a deed of conveyance of the home property, and that nothing was said at the time of the execution of the deed to indicate that Mrs. Woolwine was to hold the property in trust.

In our opinion, appellees have failed to establish by clear, convincing and unequivocal evidence that a trust was created in their favor in the Woolwine property.

The decree of the lower court will be reversed and annulled and a decree will be entered in this court establishing a fee simple title in Mary W. Ingles to the property conveyed to her by Belle P. Woolwine.

*Reversed.*