Daisy B. STONE, Appellee,

v.

Richard Fielding STONE, III, Appellant.

Daisy B. STONE, Appellant,

v.

Edley Craighill Nicholas STONE,
Appellee.

Nos. 71–1995, 71–1996.

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1972.

Decided May 23, 1972.

William Rosenberger, Jr., Lynchburg, Va., for Richard Fielding Stone, III, and Edley C. N. Stone.

Richard F. Stone, Lynchburg, Va., for Daisy B. Stone.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and RUSSELL, Circuit Judge.

DONALD RUSSELL, Circuit Judge:

A grandson, to whom a grandmother transferred certain corporate stocks many years earlier, appeals from a judgment, entered after trial without a jury, finding that such transfer, though absolute in terms, was in fact in trust, and that, by the terms of the trust, as subsequently reduced to writing some fourteen years after the gifts began, the donor had the right to terminate, and had terminated the trust, resulting in a reversion of the remaining *res* to the donor. The judgment, challenged by this appeal, also included a provision requiring the grandson to convey all stocks then held by him, which had previously been transferred to him by the grandmother, over to his father as trustee. In the same action, tried along with the proceeding to establish a trust, the grandmother sued her former daughter-in-law for conspiracy in allegedly assisting the granddaughter to convert to her personal use property subject to a trust. The District Court, 330 F.Supp. 1026, dismissed the conspiracy action. The grandson appeals from the finding that he held the stock in trust and the grandmother appeals the dismissal of her conspiracy action. We affirm the dismissal of the conspiracy suit and reverse the action to impress a trust.

The facts are not substantially in dispute. From time to time, beginning in 1951, and continuing until 1964, the grandmother transferred, or purchased with instructions to transfer, to her granddaughter and her grandson, both children of her son and daughter-in-law, various corporate stocks. At the time the transfers began, the grandson was five years of age. All stocks, at the direction of the grandmother, were registered in the names of the granddaughter and grandson as absolute owners, without any words of restraint or trust. The stock certificates, when issued, were

mailed direct to the grandchildren at their home. The stocks were later placed by the father in a safety deposit box to which originally both mother and father had a key. The motive for the transfers, as testified to by the grandmother-donor, was to provide for the education of the grandchildren. She did not, however, communicate this purpose to any one at the time. Nor did she anticipate or consider any possibility of a later reverter to her of any part of the gifts. She testified she understood that, by the unequivocal transfers to her grandchildren, she was placing the stocks under their management and control. Until 1965, the bulk of all dividends and the proceeds of sales of some of the stock were received and expended for the support, benefit or education of the grandchildren. During this time, certain of the stocks were hypothecated by the granddaughter and later sold, with the knowledge of the father. The grandmother did not request or receive any accounting of the use of either the stocks or the dividends thereon. In 1964, the father and mother were divorced and the father and grandson became estranged. At this point, fourteen years after she had begun the gifts the grandmother, along with her son, the father of the two grandchildren, executed a written trust agreement. In this instrument, prepared by the father-son, the father-son was named trustee of the property conveyed absolutely to the grandchildren years earlier. This trust instrument provided that the trust could only be used for the education of the grandchildren. The trustee was given the right to select the college to be attended by the grandchildren, although at the time the granddaughter had attained her majority, had finished college and was married. Finally, the donor was given the right to terminate at her discretion the trust, with any part of the trust remaining reverting to her. At the time this instrument was executed, the granddaughter had hypothecated the remaining stocks transferred to her by her grandmother. In fact, it was this

hypothecation which constituted the basis of the grandmother's action against her former daughter-in-law in conspiracy. On these facts, the District Court found a valid trust. Such a conclusion, in our opinion, is clearly erroneous.

■ The validity of the finding of a trust in this case, as made by the District Court, is the key issue and is determinable by Virginia law. Under such law, in keeping with the general rule elsewhere, a trust in personalty may be established by parol, but "the burden of proving the existence of a trust (in personalty) rests on the person asserting it, * * *." Darden v. Darden (C.C.A. Va.1945) 152 F.2d 208, 209. To create a trust in personalty, the intention must be manifested by a declaration, which, while not necessarily expressed in formal words (Tate v. Hain (1943) 181 Va. 402, 25 S.E.2d 321, 324), "must be unequivocal and explicit" and which, in its expression of the nature and terms of the trust, must be proved by "evidence clear and convincing". Young v. Holland (1915) 117 Va. 433, 84 S.E. 637, 638; Virginia Trust Co. v. Minar (1942) 179 Va. 377, 18 S.E.2d 879, 883; Ingles v. Greear (1943) 181 Va. 838, 27 S.E.2d 222, 223. "If the language is so vague, indefinite, or equivocal that any one of the elements is left in uncertainty, the trust must fail." Woods v. Stull (1944) 182 Va. 888, 30 S.E.2d 675, 682; In Re Wallace's Estate (1934) 316 Pa. 148, 174 A. 397, 398–399. Moreover, "The act creating the trust must be consummated, and not rest in mere intention" (Warner v. Burlington Federal Savings & Loan Ass'n. (Vt.1946) 114 Vt. 463, 49 A.2d 93, at p. 96), must represent a completed, executed transaction *in praesenti*, and normally must involve delivery of the title in the trust res to the trustee or be the equivalent of such delivery (Schenker v. Moodhe (1938) 175 Md. 193, 200 A. 727, 730). The intention cannot be manifested by a subsequent declaration made or act done after the gifts, absolute on their face, have been made. Brame v. Read (1923) 136 Va. 219, 118 S.E. 117, 119; Showalter v.

Miller (1941) 70 Ohio App. 232, 45 N.E.2d 774, 775.

While it is true the creation of a trust need not be communicated either to the beneficiary or the trustee (Sections 35 and 36, Restatement of Trusts, 2d Ed.), it is generally not permissible that the trustee and beneficiary be the same. See, Annotation, 151 A.L.R. 1287; Gray v. Harriet Lane Home for Invalid Children (1949) 192 Md. 251, 64 A.2d 102, 107. And this is particularly true, when the trust *res* has been recorded in one's name as owner, as is the case here, where there is a presumption against any parole trust. Doan v. Vestry of Parish of Ascension (Md. 1906) 103 Md. 662, 64 A. 314, 315–316, 7 L.R.A.,N.S., 1119, 115 Am.St.Rep. 379; Murphy v. Cartwright (5th Cir. 1953) 202 F.2d 71, 74. Nor does a statement of the purpose for which a gift is made "show an intent to make the donee a trustee to accomplish that purpose." Bogert on Trusts (2d Ed.) sec. 46, p. 326. "Indication of motives, although they are motives for making a gift, does not suffice to manifest intention to create a trust." 54 Am.Juris., sec. 53, p. 64. Thus, in Richardson v. Seevers' Adm'r. (1888) 84 Va. 259, 4 S.E. 712, 717, it was held that a devise "for the benefit of his wife and children" was insufficient to create a trust, the quoted words merely indicating "the motive of the gift to the father".[1] Specifically, a gift expressed as being made "for educational purposes", which is the claim for the gifts in this case, is not to be construed as engrafting a trust upon the gift "but merely as an expression of a desire on the part of the testator that, if possible, the property be so used." Watts v. Finley (1939) 187 Ga. 629, 1 S.E.2d 723, 727; Haley v. Heirs of Somerville (Fla.App.1958) 108 So.2d 780, 782; In Re Cunningham's Estate (1940) 340 Pa. 265, 16 A.2d 712, 715.

It is plain from this review of the authorities that any finding of a trust herein cannot be justified. When made, the donor had no idea to create a trust; she actually testified the idea developed as she began to appreciate the amount of the gifts made. She evidenced her intention that her gifts be absolute and not in trust by registering the stocks in her grandchildren's names, without any indication of a trust. The mere fact that she was prompted by the desire to provide for the grandchildren's education, while explaining her "motive", did not impose any trust on the property given. As a matter of fact, it is rather clear the whole idea of a trust developed after all the gifts had been completed and was the outcome of the marital break-up of the son's marriage and the disagreement between the father and son. It was at this point that a written trust was prepared. As written the trust agreement evidenced its contemporaneous character and rebutted any notion that it was memorializing any clearly formulated previous trust. It provided for a trustee when the grandmother conceded she had no trustee in mind at the time she made her gifts. The alleged trustee was not informed that a delivery in trust was being made to him when the gifts were made; actually, there was no *bona fide* delivery to the alleged trustee of any trust *res* at the time the trust was allegedly created. The written agreement required annual reports. The grandmother in her testimony indicated that she originally expected no accounting. The written agreement provided that the schools attended by the grandchildren must be approved by the trustee. It included a reverter clause, something the grandmother never claimed originally; in fact, she admitted that, when she began her gifts, she expected no reversion. Without reviewing in greater detail, it is too obvious for serious argument that the written instru-

---

[1] To the same effect are, Johnson v. Johnson (1962) 256 N.C. 485, 124 S.E.2d 172, 173; Clark v. Connor (1960) 253 N.C. 515, 117 S.E.2d 465, 468; Warner v. Burlington Federal Savings & Loan Ass'n., *supra*, 49 A.2d at p. 96.

ment was an afterthought. The grandmother failed completely in her proof to establish by clear and convincing evidence that the grandchildren took their gifts in trust and the finding of the District Court to the contrary is clearly erroneous. The complaint of the plaintiff-grandmother against the grandson should be dismissed and the order directing the grandson to convey any of the corporate stocks given him by his grandmother to his father as trustee should be vacated.

Since the effect of our ruling on the issue of a trust *vel non* fixes ownership in the granddaughter of the stocks transferred to her, it is obvious that no action for conspiracy can lie against the erstwhile daughter-in-law for aiding the granddaughter in converting such stock and the order of the District Court, in dismissing the conspiracy action is clearly right.

*Affirmed in part and reversed in part.*