**PARKERSON et al. v. CHAPMAN et al.**

No. 5971.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 14, 1949.

Decided Jan. 4, 1950.

Alvah H. Martin and Russell T. Bradford, Norfolk, Va. (Bertram S. Nusbaum, Norfolk, Va., on brief), for appellants.

Thomas H. Patterson, Washington, D. C. (Albert F. Anderson Leesburg, Va., and Albert W. Fox, Washington, D. C., on brief), for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The subject matter of this suit is the title to a lot of ground 500′ x 250′ in Princess Anne County, Virginia, known as Glen Rock, upon which are located a storage building and other structures. The principal questions at issue are whether the evidence was sufficient under the law of Virginia to sustain the conclusions of the District Judge: (1) that a deed of the property from William R. Chapman, Jr., to his daughter, Harriet Chapman R. Forney, purporting to convey a fee simple estate, was executed subject to a valid parol declaration of trust under which the conveyance was made for the sole purpose of enabling the grantee to execute a deed of trust or mortgage on the property to secure a loan not exceeding $10,000; and (2) that the Hidud Realty Corporation did not get good title when it purchased the property at a foreclosure sale conducted under the supervision of the Circuit Court of Princess Anne County, Virginia, by a trustee under a mortgage deed of trust executed by Mrs. Forney and her husband to secure the Merchants and Planters Bank of Norfolk for a loan of $10,000. The pending suit was brought by William R. Chapman, Jr., and his daughter to secure a judgment declaring, notwithstanding the foreclosure sale, that Chapman held title to the land, subject to any indebtedness due to the bank for money advanced by it on the security of the land, and that the purchaser at the foreclosure sale held the property in trust for Chapman. Upon the

death of Chapman pendente lite, the representatives of his estate were substituted as parties to the suit. The defendants in the suit included the bank, the trustee under the mortgage deed of trust, and the purchaser at the foreclosure sale. The District Court adjudged that the property was impressed with a valid trust in favor of Chapman, and that Hidud did not acquire a valid title in the foreclosure proceedings since Chapman was not a party to the proceeding and Hidud had notice of the trust.

It is necessary to summarize the complicated facts in order to show the background of the litigation. William R. Chapman, Jr., a resident of Philadelphia, acquired the land in 1928. His daughter was the wife of Charles Forney who owned or controlled a number of business corporations which occupied the property under leases from Chapman. From time to time Chapman rendered financial assistance to Forney to enable him to prosecute his various business enterprises. Forney also borrowed money from the Merchants and Planters Bank. On July 16, 1938, in order to facilitate Forney's relations with the bank, Chapman and his wife made a deed of the property at Glen Rock, absolute on its face, to Mrs. Forney which was duly recorded; but the evidence indicates that it was plainly understood between Chapman and the Forneys that the deed was given to enable Forney to borrow not exceeding $10,000 from the bank on the security of the property, and that subject to this purpose, the Chapmans remained the owner of the land. On the same day the Forneys executed a deed of trust to Jesse J. Parkerson, who was the president of the bank, whereby the grantors conveyed the property in trust to secure to the bank the payment of a note for $10,000 of even date made by the Forneys and payable on demand to the bank at Norfolk, Virginia, with interest. The deed contained the usual provisions descriptive of the trust, including the provision that upon any default being made in the payment of the debt, the trustee, as soon as he should be requested by the creditor, should sell the property at public auction after advertisement in one or more newspapers published in Norfolk, the trustee to apply the proceeds of sale to the payment of the expenses attending the execution of the trust, the payment of the indebtedness secured, and the balance, if any, to the grantors in the deed. The grantors covenanted to keep the buildings on the land insured in the sum of not less than $10,000 and the trustee was empowered to collect any money which might become payable under the policies of insurance, and after charging a reasonable fee for services, to distribute the balance as if it were the proceeds of a sale under the deed.

In 1939 Mrs. Forney became estranged from her husband and returned to Philadelphia where she resided before her marriage. Subsequently she secured a divorce and married George G. Pierie.

On September 4, 1940, the Forneys leased Glen Rock to the Princess Anne Corporation, one of Forney's corporations, for ten years at a rental of one dollar per year, and on the same day the Princess Anne Corporation subleased part of the property to the Norfolk Tidewater Terminals, Incorporated, for a period of five years with a right of renewal for another five years. Both of these leases were recorded on September 14, 1940, in the Circuit Court of Princess Anne County. Harriet Chapman Forney and Jesse J. Parkerson, trustee, joined in this sublease, and the latter agreed that he would not declare the deed of trust in default so long as he received $300 per month from the lessor, the Princess Anne Corporation. Neither of these leases contained any reference to a trust upon the land in favor of William R. Chapman. Both of them recited that the land in question had been acquired by Mrs. Forney from her father in 1938, and the sublease contained a recitation of the deed of trust to the bank. The evidence is undisputed that William R. Chapman, Jr. was fully informed as to this leasing arrangement and gave his consent thereto.

In an instrument dated September 20, 1940, and recorded in the Circuit Court of Princess Anne County on April 8, 1941,

Princess Anne Corporation assigned its interest as lessor in the Tidewater lease to Chapman. The deed recited the acquisition of the property by Chapman in 1928, its conveyance to Mrs. Forney in 1938, and further stated that the latter conveyance was for convenience and in trust for William R. Chapman, Jr. or the Medical Arts Realty Company, a Pennsylvania holding company owned by Mr. Chapman, as their interests might appear. This was the earliest reference made in any recorded conveyance to the existence of a trust in favor of Chapman. The deed also referred to the execution of the Forney deed of trust in 1938 and to the two above mentioned leases in 1940, and assigned to Chapman or Medical Arts Realty Company all of the right, title and interest of the Princess Anne Corporation in the rents arising under the lease to the Norfolk Tidewater Terminals, Incorporated.

Forney made use of the $10,000 note payable to the bank as collateral security for certain loans to his corporations but failed to pay the note when demand was made. Accordingly, Parkerson, trustee under the Forney deed of trust, at the request of the bank, advertised the property and the buildings thereon for sale on April 20, 1942. At the same time one Howard G. Martin, cashier of the bank, who was trustee under two chattel deeds of trust given by certain of the Forney corporations to secure loans from the bank, advertised machinery in the plant at Glen Rock for sale on the same day. Prior to the day of sale, Forney and three of his corporations filed a bill of complaint in the Circuit Court of Princess Anne County, Virginia, to enjoin the sales until such time as a true statement of the account between the bank and the corporations could be ascertained under the supervision of the court. The bill of complaint recited that Mrs. Forney was the owner of record of the real estate advertised for sale, "holding the said property under a declaration of trust for the Medical Arts Realty Company of Philadelphia, Pennsylvania." The complaint further alleged that the property had been leased to the Princess Anne Corporation,

one of the complainants. The defendants in this suit were the bank and the two trustees under the above mentioned deeds of trust. An interlocutory decree enjoining the sale was entered by the court and on May 19, 1942, the case was referred by the court to a commissioner to ascertain the status of the indebtedness of the Forney corporations to the bank.

On July 16, 1942, while the matter was pending before the Commissioner, Harriet Forney and Charles Forney executed a deed by which they conveyed Glen Rock to the Princess Anne Tobacco Storage Corporation, which was also one of Forney's companies. This instrument, which was unrecorded, in addition to the description of the property contained the following provisions:

"Witnesseth: Whereas the title to the hereinafter described real property and the improvements thereon is in Harriet Chapman Forney subject to a Deed of Trust to Jesse J. Parkerson, Trustee under a declaration of trust in favor of Medical Arts Realty Company, of Philadelphia, and

"Whereas: Harriet Chapman Forney having the consent and approval so to do of Medical Arts Realty Company desires to convey all of her right title and interest in said real estate * * * * to Princess Anne Tobacco Storage Corporation a Virginia Corporation but subject to the declaration of trust in favor of Medical Arts Realty Company * * * * *.

"This conveyance is made subject to Declaration of conveyance in trust in favor of Medical Arts Realty Company under which Princess Anne Tobacco Storage Corporation agrees to hold said property in trust for Medical Arts Realty Company under a power limited to encumbering said property to the extent of not more than $20,000.00 and thereunder to discharge all encumbrance on said property existing at this time to wit a Mortgage securing a note for $10,000.00 the encumbrance at any time to be not more than said $20,000.00 and that power being limited to the one time such encumbrance of $20,000.00 may be made.,

"Charles Forney joins in this instrument as evidence that he, the said Charles Forney, quit claims in favor of Medical Arts Realty Company any claim he has or might have to or in said property.

\* \* \* \* \*

"Upon the payment and discharge of said encumbrance of $20,000.00 any Power vested in Princess Anne Tobacco Storage to encumber said property shall cease, be null and of no effect unless further consent be first obtained in writing from Medical Arts Realty Company., \* \* \*

"This deed is made for the convenience of the parties to clear title to quit claim in favor of Princess Anne Storage Corporation under and in trust but in limited power recited all other rights being in Medical Arts Realty Company."

This deed was executed with the approval of Chapman.

On April 20, 1943, the Commissioner appointed by the Circuit Court of Princess Anne County reported that the total of all loans which had been made to Forney and his corporations was $224,702.21, which had been consolidated into three collateral notes. He also found that one of these notes, executed by the Princess Anne Corporation for the sum of $9,391.75 was secured by the Forney deed of trust on Glen Rock, and that the sum of $8,621.08 was due thereon. He also found that $7,040.20 received by the bank under fire insurance policies on the property on account of a fire in 1940 and $2,334.28 received for rent from the Norfolk Terminals Corporation under the sublease of September 20, 1940 above mentioned, were properly credited on Forney's debts to the bank.

The court approved the report of the Commissioner on July 10, 1943 and ordered that the property be sold unless the amounts found to be due to the bank were paid within three days. Jesse J. Parkerson and Howard J. Martin, trustees under the above mentioned deeds of trust, were appointed special commissioners to make the sale subject to the approval of the court; and the special commissioners advertised a sale of the property to be held at public auction on July 24, 1943.

On July 23, 1943, the complainants in the state court, together with the Princess Anne Tobacco Storage Corporation and Hidud Realty Company, petitioned the court to direct the commissioners to accept a bid of Hidud to pay $19,020.40 for the real estate and machinery at private sale, subject to the ability of the commissioners to convey an indefeasible title to the property. The petition recited that during the progress of the cause Mrs. Forney had conveyed the real property to the Princess Anne Tobacco Storage Corporation subject to the indebtedness due the bank which was secured by the Forney deed of trust; and that the Hidud had agreed with the Storage Corporation to bid for the property in the sum mentioned. On the same day an order was passed directing that the offer of Hidud be accepted and the trustees conveyed the land and the machinery to the purchaser.

In due course the purchase money was applied to the payment of the expense of the proceeding and the debts which the Forney Corporations owed the bank. In making a distribution of the purchase price of $19,020, 65% or $12,363.26 was taken as the price of the real estate, and 35% or $6,657.13 as the price of the machinery. No one appeared in the case on behalf of Chapman and the attention of the court does not seem to have been called to the references in the record to the interest of Chapman or the Medical Arts Realty Company in the property.

It was found in the pending case that Forney procured Hidud as the purchaser, was instrumental in consummating the sale, and contributed $2500 to the purchase money, and after the sale, continued to operate the business at Glen Rock under an agreement with the purchaser.

On November 23, 1943, Hidud conveyed the real and personal property at Glen Rock by deed of trust to Bertram S. Nusbaum, trustee, to secure a note of even date for $50,000 payable to Dr. Dudley Cooper, one of the officers of Hidud, who had personally spent substantial sums upon the property subsequent to its purchase by Hidud. Dr. Cooper then negotiated a loan

of $35,000 from the Seaboard Citizens National Bank of Norfolk which took the note secured by Hidud's deed of trust as collateral security.

In order to satisfy the purchaser as to the title which stood on the land records in the name of Mrs. Forney, Forney produced what purported to be the unrecorded deed of July 16, 1942, by which, as set out above, Mrs. Forney had conveyed the property to the Princess Anne Tobacco Storage Corporation. That deed contained the explicit recital quoted above that Mrs. Forney and the Princess Anne Tobacco Storage Corporation held the property subject to a trust in favor of the Medical Arts Realty Company, but the deed which Forney presented to the attorney for the purchaser had been altered. It retained that part of the second page on which the grantor's signatures appeared, but all reference to the rights of the Medical Arts Realty Company was eliminated except a three line paragraph which was concealed beneath the flap of the folder in which the deed was enclosed. The attorney for the purchaser was of opinion that the deed as altered was defective in respect to the granting clause. Accordingly, he made a photostatic copy of it, drafted a new deed, and sent the two documents to Chapman with the request that he have Mrs. Pierie execute the redraft. The letter was called to Chapman's attention, but he refused to have anything to do with it, because he was ill; but his son, William R. Chapman, III, and Mrs. Pierie conferred about the matter and believing that the instrument was similar in all material respects to the deed which the Forneys had executed on July 16, 1942, executed the redrafted instrument on July 23, 1943 and returned it to the purchaser's attorney. The redrafted deed did not contain any reference to the trust in favor of the Medical Arts Realty Company. The brief reference to this trust, which was contained in the altered deed, appeared in the photostatic copy thereof which consisted of two pages, but it was not noticed by the grantors that the reference to the trust did not appear in the redrafted deed, and the attorney for the purchaser testified that he did not notice the brief reference to the trust in the photostatic copy.

The first issue to be resolved is whether under the law of Virginia the deed from Chapman to his daughter in 1938 was impressed with a parol trust in his favor. It was not until 1915 that the Supreme Court of Virginia declared in the case of Young v. Holland, 117 Va. 433, 84 S.E. 637, that an express trust in real estate may be created by parol provided the declaration is unequivocal and explicit, and the evidence is clear and convincing. The necessity of an unequivocal and explicit declaration of trust by the grantor at or prior to the conveyance, the insufficiency of the testimony of the grantor alone as to his intention at the time of the conveyance, or of statements made by the grantee subsequent to the conveyance were emphasized in the later cases of Powers v. Long, 1921, 131 Va. 284, 108 S.E. 664 and Brame v. Read, 1923, 136 Va. 219, 118 S.E. 117. This is apparent from the language of the court in Brame v. Read, 136 Va. at page 224, 118 S.E. at page 119: "Even if the alleged declarations of Charles F. Read (the grantee) subsequent to the conveyance were established by convincing evidence, these alone would be insufficient to establish an equitable title in his wife. While his declarations would be held significant in support of an express trust, which had been impressed upon the land by the grantor when the conveyance was made, they are insufficient of themselves to create such a trust, which was not so impressed by the grantor at the time of the conveyance. To permit such subsequent declarations to have such effect would be to convey an estate in land by parol, which is expressly prohibited by statute. Jesser v. Armentrout's Ex'r, 100 Va. 666, 42 S.E. 681."

As to the weight to be given testimony of non-interested third parties tending to prove the declaration by the grantor, the court stated in Garrett v. Rutherford, 108 Va. 478, 480, 62 S.E. 389, 390: "Evidence consisting of the mere repetition of oral statements—and especially when made to

and proved by persons having no interest in the subject of the conversation—is of the weakest and most unreliable character, and should be received with the greatest caution. And unless corroborated by other proof, or aided by surrounding circumstances, it must be held insufficient to establish any material fact."

■ The District Judge concluded that the evidence in the pending case was sufficient to support the finding that Chapman and his daughter had an agreement at the time of the execution of his deed to her on July 16, 1938, that the conveyance was made for the specific purpose of enabling her to borrow funds or establish credit in an amount not exceeding $10,000 to be secured by deed of trust on the property, and hence as between the parties, the deed did not convey a fee simple title but was in trust for the purpose stated. The court, however, found that the bank was not given actual notice of the trust, and that, proceeding on the assumption that Mrs. Forney owned the property in fee, took the note as collateral security to secure payment of loans by the bank to Forney and his corporations in the amount of $10,000. We are of opinion that these findings are supported by the evidence. Chapman testified in effect that he deeded the property to his daughter with power to use it as security but without power to sell. It is true that his testimony taken on December 3, 1945, when he was in ill health does not establish with precision the details of the trust; but when his evidence is considered in connection with the evidence of other witnesses and with the written documents exhibited to the court, to wit, the testimony of his daughter, the testimony of Forney and the allusions to and description of the trust in the recorded deed of September 20, 1940, from the Princess Anne Corporation to Chapman, the explicit description of the trust in the unrecorded deed of July 16, 1942 from Forney and wife to the Princess Anne Tobacco Storage Corporation, and the allegations in the bill of complaint in the state court that Mrs. Forney held the property under a declaration of trust, it is seen that the proof of the trust meets the standards of the Virginia law. Strong corroboration is found in the effort to conceal the existence of the trust which was manifest in the delivery of the mutilated deed of July 16, 1942 by Forney to the attorney for the purchaser at the foreclosure sale.

■ We come to the second main question, that is, whether the interest of Chapman in the property was transferred to Hidud by the deed of the commissioners under the order of the state court in the foreclosure proceeding. The District Judge held that the title remained in Chapman notwithstanding this transfer, because Chapman was not a party to the foreclosure proceeding and Hidud had constructive notice of Chapman's interest in the land. We are of the opinion that these conclusions should be sustained. There can be no doubt that the references to the trust in Chapman's favor, contained not only in the recorded deed of September 20, 1940 from Princess Anne Corporation to Chapman but also in the bill of complaint itself in the foreclosure proceedings under which Hidud claims title were sufficient to put the purchaser on notice, even if we overlook the failure of the attorney for the purchaser to examine the photostat of the mutilated deed wherein the existence of the trust was also disclosed. The bank also had notice it was defendant in the foreclosure suit.

■ It is equally true that the sale and conveyance of the property in the foreclosure proceedings did not affect Chapman's interests therein since he was not a party to the suit. The general rule in Virginia is that a cestui que trust is not bound by a decree rendered against his trustees in a chancery suit to which he is not a party, because it is a fundamental principle of the court that all parties, however remotely concerned in interest, must be before it before any decree can be made to bind them. Collins v. Lofftus, 10 Leigh, Va., 5, 34 Am.Dec. 719; Carnahan v. Ashworth, 2 Va. Dec. 608, 31 S.E. 65; Sexton v. Crockett, 23 Grat., Va., 857; Kendrick v. Whitney, 28 Grat., Va., 646. This rule of course applies to per-

sons whose interests will be affected by a decree of the court in foreclosure proceedings. Noyes v. Hall, 97 U.S. 34, 24 L.Ed. 909; Wolfenberger v. Hubbard, 184 Ind. 25, 110 N.E. 198, Ann.Cas.1918C, 81; Jones v. Williams, 155 N.C. 179, 71 S.E. 222, 36 L.R.A.,N.S., 426; 37 Am.Jur. § 550; 3 Jones, Mortgages, § 1784; 59 C.J.S., Mortgages, §§ 624(a), 627(a), 627 (h).

█ It has been suggested that the failure to join Chapman as party defendant in the foreclosure case was cured by the fact that the Princess Anne Tobacco Storage Company, grantee of the land in the deed of July 23, 1943 from Chapman's daughter, joined in the petition to the state court to approve the sale, and then conveyed its interest in the land to the purchaser. That this argument is not tenable is readily apparent. Chapman's daughter had no right, in view of the parol trust for her father's benefit, to convey an unrestricted title to the Storage Company and the Storage Company had no greater right since it took the title with complete knowledge of the trust disclosed in the first deed from Mrs. Forney to it of July 16, 1942. It is true that Mrs. Forney was authorized to pledge the property for $10,000 for her husband's benefit and to take such steps as were essential for this purpose including participation as mortgagor in a foreclosure proceeding; but she was also charged with the duty to protect her father's interest under the trust by seeing to it, in case of foreclosure, that the property was sold for the best price obtainable. That this duty was neglected is made very clear by the abandonment of the auction on the eve of the advertised public· sale.

█ The grantors in the Forney deed of trust endeavored at the beginning to carry out this duty by inserting in the deed the customary provision that in case of default the property should be sold at public sale. It is held in Virginia and elsewhere that in a foreclosure suit the court which orders a sale of the property has no authority to vary the terms of the contract in the deed of trust with respect to the terms or manner of sale. New York Life Ins. Co. v. Kennedy, 146 Va. 197, 135 S.E. 882; Schmidt & Wilson v. Carneal, 164 Va. 412, 180 S.E. 325; Wilson v. Wall, 99 Va. 353, 38 S.E. 181; Greenleaf v. Queen, 1 Pet. 138, 145, 7 L. Ed. 85. While such a departure from the terms of the deed of trust would not render a sale, which has been approved by court order, subject to collateral attack, it is a circumstance to be considered by a court of equity in enforcing the rights of a cestui que trust which have been ignored in the sale and of which the purchaser was charged with notice.

It may well be that a mortgagor who owns the equity of redemption may consent to a private sale despite such a provision in the deed of trust; but in this case the mortgagor was trustee for another, and had no power to ignore the provision and consent to a sale that was not designed to protect the other's interest, but was made at the instigation of Forney and served to promote his interest as prospective manager of the business to be conducted by the purchaser on the land.*

The situation resulting from the conclusions of law reached in the court below was carefully considered by the District Judge. He found that Hidud and its attorney and Chapman had each acted in good faith throughout the transaction, but that Hidud had acquired valuable property at the expense of Chapman and had, on the other hand, expended considerable sums in paying for the property and in improving it, and he therefore con-

---

* There seems to be a conflict of authority as to whether or not the beneficiaries of a trust should be made parties to a foreclosure suit when the mortgage is executed by the trustee. See 59 C.J.S., Mortgages, § 624(i); Cooper v. Loughlin, 75 Tex. 524, 13 S.W. 37; Moss v. Johnson, 36 S.C. 551, 15 S.E. 709; Baxter v. Fort Payne Co., 182 Ala. 249, 62 So. 42; 3 Jones, Mortgages, § 1784. The cases which support the negative of the proposition do not indicate such a neglect of the beneficiary's interests as is found in the pending case, or furnish ground to depart from the Virginia rule set out in the opinion.

cluded that the appropriate equitable remedy was the restoration of the parties as nearly as possible to the statuts quo ante.

Accordingly, the case was referred to a commissioner to state an account and the commissioner's report was subjected to the examination of court and counsel at a hearing and was then sent back to the commissioner for further study. In this examination mutual debits and credits between Chapman and the bank and between Chapman and Hidud were considered, and a balance struck. The calculations necessarily differed from those of the commissioner in the state court proceeding, who was not called upon to ascertain the rights of Chapman in the property and seems to have concluded that the bank was free to apply the purchase price of the property, the proceeds of the insurance policies and the rents from Glen Rock to any indebtedness due by Forney.

The final determination of the District Court was that the bank was indebted to Chapman in the sum of $4,839.04 with interest from December 29, 1944, after crediting the bank with the amount of the $10,000 note secured by the Forney deed of trust and with expenditures for taxes, insurance and repairs on account of Glen Rock, and charging the bank with the monies collected from the proceeds of insurance policies and rents; and that Hidud was entitled to a lien on the property in the sum of $8,485.55, with interest from the date of the decree, after crediting Hidud with the amounts paid by it toward the purchase price of the property, in making improvements thereon, and paying for taxes and repairs, and charging it with the rental value of the property during its occupancy. The evidence in the case supports these findings.

The decree of the District Court also adjudged that upon the payment and discharge of the lien in favor of Hidud above mentioned, certain instruments executed during the period of time covered by the transactions in this case should become null and void, namely, the deed from Chapman and wife of July 6, 1938, to his daughter, Harriet Chapman Forney, the deed of trust from Harriet Chapman Forney and husband to Parkerson, trustee, of July 16, 1938, the lease from Harriet Chapman Forney and husband to Princess Anne Corporation of September 4, 1940, and the unrecorded deed from Harriet Chapman Forney and husband to the Princess Anne Tobacco Storage Company of July 16, 1942, and the deed from H. C. Pierie to the said corporation of July 23, 1943. It was also adjudged that at the same time the following instruments should become void insofar as they affect the title to the real estate at Glen Rock, to wit: the deed from Parkerson and Martin, commissioners and trustees, of July 30, 1943, conveying Glen Rock to the Hidud Realty Corporation, and the deed of trust of the Hidud Realty Corporation to Nusbaum, trustee, of November 23, 1943. The two last mentioned deeds were left unaffected by the decree insofar as they constitute liens upon the personal property at Glen Rock.

The judgment of the District Court is affirmed.

