**RESPONSE ONCOLOGY, INC., Plaintiff,**

v.

**THE METRAHEALTH INSURANCE COMPANY, et al., Defendants.**

No. 96–1772–CIV.

United States District Court, S.D. Florida.

July 29, 1997.

---

Ira M. Elegant, Buchbinder & Elegant P A, Miami, FL, Robert E. Hoskins, Foster & Foster, Greenville, SC, for Response Oncology, Inc.

Kirk Melville Gibbons, Chorpenning, Good, Gibbons & Cohn, Tampa, FL, Eliott R. Good, Columbus, OH, for Metrahealth Ins. Co., All-

state Ins. Co., Dade County Public Schools, Coca–Cola Enterprises, Inc.

Eliott R. Good, Columbus, OH, for AT&T, North American Philips Corp., Westinghouse Elec. Corp., Amerada Hess Corp., American Airlines, Inc.

Michael H. Wojcik, LeBoeuf Lamb Greene & Macrae, West Palm Beach, FL, Aluminum Co. of America.

## ORDER

GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Defendant MetraHealth, *et al.*'s Motion to Dismiss Plaintiff's, Response Oncology, Inc. ("ROI") Complaint.

### I. General Statement of Facts

ROI is a nation-wide medical care provider. ROI maintains "IMPACT Centers"[1] throughout the nation for the purpose of administering chemotherapy treatment and advance cancer treatments, including a procedure known as high dose chemotherapy supported by a peripheral stem cell rescue (hereinafter "HDC/PSCR") to individuals. *See* (Plaintiff's Complaint, ¶¶ 20 and 21). ROI administers HDC/PSCR for breast cancer, leukemia, lung cancer, lymphomas, multiple myeloma and ovarian cancer. ROI administered either high dose chemotherapy (hereinafter "HDC") or HDC/PSCR treatment to 67 patients at 19 different locations in the states of Colorado, Florida, Georgia, Missouri, New Mexico, South Carolina, Tennessee, Texas and Virginia. *See* (Plaintiff's Complaint, ¶ 23).

ROI allegedly agreed to provide the treatments to all 67 patients in consideration for each patient assigning all rights which each patient had to coverage under the respective plan. ROI is allegedly an assignee of any and all rights to recover benefits owed by Defendants to any of the patients. In addition to being an assignee, ROI alleges that it is a third-party beneficiary of the insurance contracts and benefit plans which exist between the patients and the Defendants. In each case, Plaintiff alleges that it made specific requests for pre-treatment authorization from Defendants or their claims administrator, MetraHealth.

In dealing with MetraHealth, ROI alleges that its practice was to obtain MetraHealth's pre-approval of charges prior to administering the essential treatments. Currently, ROI is seeking damages for treatments provided to patients with different diagnoses, during different time periods, at different locations, and in a wide range of amounts. ROI claims total damages of $2,035,102.09 for benefits rendered. In order to satisfy the jurisdictional amount of this Court, ROI requests this Court to aggregate the amount of its non-ERISA claims accumulated by multiple assignments.

### II. STATEMENT OF THE FACTS

#### A. The Parties

##### 1. Settled Parties

The following Defendants have settled with the Plaintiff and are no longer parties to the action: (1) Federal Express[2]; (2) Coca–Cola[3]; and (3) General Motors[4]. See Notice of Settlement

##### 2. Remaining Parties

The plaintiff in this action is Response Oncology, Inc., ("ROI") a Tennessee corporation, with its principal place of business in Memphis, Tennessee.

The remaining Defendants in this action are as follows: (1) MetraHealth Insurance Company ("MetraHealth") (f/k/a Metlife Insurance Company and Travelers Insurance Company);(2) Dade County Public Schools ("Dade County"); (3) University of Miami ("UM");(4) Allstate Insurance Company

---

1. "IMPACT" is an acronym for "Implementing Advanced Cancer Treatments."

2. On February 5, 1997, this Court entered a stipulated order of dismissal as to Defendant Federal Express. (DE 138)

3. On January 25, 1997, this Court entered a stipulated order of dismissal as to Defendant Coca–Cola. (DE 112).

4. On January 14, 1997, this Court entered a stipulated order of dismissal as to Defendant General Motors. (DE 109).

("Allstate"); (5) GTE Corporation ("GTE"); (6) Amoco Corporation ("Amoco"); (7) AT & T Corporation (AT & T); (8) North American Philips Corporation ("Philips"); (9) American Airlines, Inc. ("American Airlines"); (10) Genuine Parts Company d/b/a NAPA Auto Parts ("NAPA"); (11) Railroad Employees' National Health and Welfare Plan, ("Railroad Employees"); (12) Westinghouse Electric Corporation ("Westinghouse"); (13) Amerada Hess Corporation ("Amerada Hess"); (14) Aluminum Company of America ("ALCOA").

With the exception of MetraHealth, Defendants at the relevant times were employers of one or more of the patients.

### B. Non–ERISA Patients With Claims That Do Not Exceed The Diversity Jurisdictional Amount

The following patients have claims that do not meet or exceed the requisite diversity jurisdictional amount of $50,000:

1. Gail Andich, an employee of Dade County Public Schools who was treated for breast cancer with HDC from January, 1995 until approximately November, 1995 and incurred total charges of $77,486.33, upon which payment has been received in the amount of $38,914.60, leaving a balance of $38,571.73.

2. Elizabeth Carroll, an employee of Dade County Public Schools, was treated with HDC for multiple myeloma at the IMPACT Center of Dade County from May, 1995 until August, 1995, and incurred total charges of $74,325.94, upon which payment has been received in the amount of $28,203.96, leaving a balance of $46,121.98.

3. Betty Reynaud, an employee of Dade County Public Schools, was treated at the IMPACT Center of Dade County with HDC for breast cancer from April, 1995 until June, 1995, and incurred total charges of $41,796.17, upon which payment has been received in the amount of $11,723.10, leaving a balance of $30,073.07.

5. David Whitten, Barbara Stover, Alicia Rodriguez and John Martin are Non–ERISA, Non–Diversity patients. Plaintiff failed to allege that

4. Myrna Hudson, an employee of Dade County Public Schools, was treated with HDC for breast cancer at the IMPACT Center of Dade County from February, 1995 until March, 1995, and incurred total charges of $33,988.28, upon which payment has been received in the amount of $29,225.12, leaving a balance of $4,763.16.

5. Leonard Glazer, an employee of Dade County Public Schools, was treated with HDC/PSCR for lymphoma at the IMPACT Center of Dade County from April, 1995 until May, 1995, and incurred total charges of $39,759.41, upon which payment has been received in the amount of $20,434.41, leaving a balance of $19,325.00.

6. Hazel Bethel, an employee of Dade County Public Schools, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Dade County, Florida from December, 1994 until April, 1995, and incurred total charges of $59,280.47, upon which payment has been received in the amount of $31,166.21, leaving a balance of $28,114.26.

7. Judith Hager, an employee with St. Petersburg Junior College is insured under a fully insured Metropolitan Life Insurance Company plan through her employment. St. Petersburg Junior College is a governmental entity. Ms. Hager was treated at the IMPACT Center of Clearwater, Florida for breast cancer from July, 1992, until November, 1992, and incurred total charges of $24,726.75 upon which payment has been received in the amount of $14,055.37, leaving a balance of $12,291.38.

### C. Non-ERISA Patients With Claims That Do Not Exceed The Diversity Jurisdictional Amount And The Employers Are Not A Party To This Action

The following patients [5] have claims that are not governed by ERISA, and their employers are *not* parties to this action, however, the patients have insurance contracts with MetraHealth:

their claims are governed by ERISA. Therefore, these patients are included in section II(C).

1. Sandra Monetta, who was an employee of the State of New York and who is insured through a plan administered by Metra-Health, was treated for breast cancer from April, 1994 until October, 1994, and incurred total charges of $64,363.93, upon which payment has been received in the amount of $32,702.77, leaving a balance of $31,661.16.

2. Margaret Speck, an employee of the State of New York, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Newport News, Virginia, from January, 1995 until June, 1995, and incurred charged of $61,839.22, upon which payment has been received in the amount of $44,194.04, leaving an outstanding balance of $17,644.88.

3. Jeanine Archambault, an employee of the State of New York, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Albuquerque, New Mexico, from March, 1994 until April, 1994, and incurred total charges of $41,179.03, upon which payment has been received in the amount of $23,449.03, leaving an outstanding balance of $17,730.00.

4. Geraldine Borzello, an employee of the State of New York, was treated with HDC/PSCR for a non-alleged disease at the IMPACT Center of Tampa, Florida, from December, 1995 until February, 1996, and incurred total charges of $19,936.26, upon which payment has been received in the amount of $4,546.41, leaving a balance of $15,389.85.

5. Beverly Dorsett, whose husband is an employee of the State of Florida, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Dade County from June, 1993 until October, 1993, and incurred total charges of $70,199.80, upon which payment has been received in the amount of $46,630.85, leaving a balance of $23,568.95.

### D. Non–ERISA Patients With Claims Which Do Not Exceed The Diversity Jurisdictional Amount And The Patients Have Private Contracts With MetraHealth

1. Carmen Alverio, who is insured under a fully insured MetraHealth plan, was treated with HDC for multiple myeloma at the IMPACT Center of Tampa from June, 1993 until December, 1993, and incurred total charges of $92,460.82, upon which payment has been received in the amount of $69,801.45, leaving a balance of $22,659.37. Ms. Alverio holds a private contract of insurance with MetraHealth.

2. Doris Russell, who has a private contract of insurance with MetraHealth, was treated with HDC for ovarian cancer at the IMPACT Center of Memphis, Tennessee from February, 1995 until May, 1995, and incurred total charges of $17,168.00, upon which payment has been received in the amount of $10,371.00, leaving a balance of $6,796.43.

3. Roy White, who is a beneficiary under a fully insured MetraHealth plan, was treated with chemotherapy for prostrate cancer at the IMPACT Center of Knoxville, Tennessee from December, 1995 until May, 1996, and incurred total charges of $1,934.94, upon which payment has been received in the amount of $355.02, leaving a balance of $1,579.92.

4. Geraldine Kidd was treated with HDC/PSCR for ovarian cancer at the IMPACT Center of Kansas City from November, 1993 until June, 1994, and incurred total charges of $66,420.01, upon which Plaintiff has received payment in the amount of $50,054.01, leaving a balance of $16,365.91.

### III. Claims of the Parties

On June 27, 1996, Plaintiff Response Oncology filed a Complaint in this Court alleging violations of § 1132(a)(1)(b) and state law claims of estoppel. Plaintiff has combined 67 claims based on different treatments, provided to 67 different individuals, in 19 different locations, in 9 states, under 46 different ERISA plans, governmental plans, and individual plans. Defendant MetraHealth, *et al.* argues that Plaintiff has improperly aggregated claims and misjoined defendants in contravention of Fed.R.Civ.P. 20 and 21. Defendant argues that Plaintiff failed to allege exhaustion of administrative remedies under claims brought pursuant to ERISA, and that the Court should dismiss the Plaintiff's ERISA actions.

## IV. DISCUSSION

A motion to dismiss is appropriate when it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). " 'In determining whether to grant a Rule 12(b)(6) motion, the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.' " *Watson v. Bally Mfg. Corp.*, 844 F.Supp. 1533, 1535 n. 1 (S.D.Fla.1993), *Aff'd.*, 84 F.3d 438 (11th Cir.1996), *citing to*, 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357 at p. 299 (1990).

■ Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept factual claims that are internally inconsistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions asserted by a party. *Ellen S. v. The Florida Board of Bar Examiners*, 859 F.Supp. 1489, 1492 (S.D.Fla.1994); *Olpin v. Ideal National Insurance Co.*, 419 F.2d 1250, 1255 (10th Cir.1969), *cert. denied*, 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809 (1970).

### A. DIVERSITY JURISDICTION

The first question presented is whether the Court has diversity jurisdiction over causes which are not covered by ERISA, and whose claims do not exceed the $50,000 jurisdictional amount.

### 1. Aggregation of Non–ERISA Claims

■ Plaintiff argues that they may aggregate all claims to meet jurisdictional requirements in diversity actions where all claims of a plaintiff are against a single defendant. *See* (Plaintiff's Opposition Memorandum, page 5). The Court declines to accept Plaintiff's invitation to aggregate its non-ERISA claims in order to meet the requisite jurisdictional amount.

Jurisdiction cannot be conferred on a federal trial court by joining in one action, against distinct defendants, claims of which none reached the requisite jurisdictional amount. *Citizens' Bank v. Cannon*, 164 U.S. 319, 322, 17 S.Ct. 89, 90, 41 L.Ed. 451.

Plaintiff has alleged that diversity jurisdiction exists on all claims that are not governed by ERISA and on all governmental plans and individual policies (¶¶ 23XX–23000). To support that argument, Plaintiff relies on *Lloyd v. Kull*, 329 F.2d 168, 170 (7th Cir.1964) and *Stone v. Stone*, 405 F.2d 94, 98 (4th Cir.1968), *aff'd. in part, rev'd. in part* on other grounds, 460 F.2d 64 (4th Cir.), *cert. denied*, 409 U.S. 1000, 93 S.Ct. 315, 34 L.Ed.2d 261, *reh'g. denied*, 409 U.S. 1118, 93 S.Ct. 896, 34 L.Ed.2d 703, for the proposition that "in order to meet jurisdictional requirements (in diversity actions), all claims of a plaintiff against a single defendant may be aggregated." (Plaintiff's Opposition Memorandum, pages 5–6). Based upon that general statement alone, Plaintiff argues that it can aggregate its claims against Dade County Public Schools and MetraHealth because Plaintiff has satisfied the amount in controversy requirement for each Defendant.

There are two flaws in Plaintiff's argument. Both cases relied upon by Plaintiff to prove that diversity jurisdiction exists do not involve an assignee that was attempting to aggregate assigned claims to obtain diversity jurisdiction. *See Lloyd*, 329 F.2d at 170 (the court aggregated injured plaintiff's claims for negligence and assault and battery against doctor arising from care and treatment in medical malpractice case); see *also*, *Stone*, 405 F.2d at 95–96 (plaintiff sued daughter-in-law in two claims relating to unlawful and unwillful diversion of trust assets). Neither case supports Plaintiff's claim for aggregating multiple claims because in each case, the claim arose out of the same transaction and occurrence.

In *Lloyd*, the Court pointed out that "In order to meet jurisdictional requirements . . . all claims of a plaintiff against a single defendant may be aggregated." *See* 329 F.2d at 170. Here, Plaintiff is not suing a single defendant. Plaintiff is suing seventeen different Defendants, on 67 distinct claims.

■ Plaintiff is not entitled to secure jurisdiction in federal court by joining separate defendants whose aggregate indebtedness to him exceeds the jurisdictional amount, absent a showing that the claims arose out of the same transaction and occurrence. *Walter v. Northeastern R. Co.,* 147 U.S. 370, 373–74, 13 S.Ct. 348, 349–50, 37 L.Ed. 206 (1893). Because the claims for each separate patient referenced above in sections II(B), II(C), and II(D) fail to meet the requisite amount in controversy, the Patients in sections II(B), II(C), and II(D) do not meet the requirement for diversity jurisdiction in this Court.

Accordingly, the claims of patients under Count I and II in sections II(B), II(C), and II(D) are dismissed because they fail to meet the requisite jurisdictional amount of $50,000 and are dismissed from this cause of action pursuant to 28 U.S.C. § 1332. The Court has jurisdiction over the claim of patient, Marlene McClean, who is an employee of Dade County Public Schools under 28 U.S.C. § 1332 because her claim is $68,499.16, and therefore meets the requisite jurisdictional amount of $50,000.

### 2. Joinder of Parties

■ In order for joinder of parties to be permissible under Federal Rule of Civil Procedure 20(a), two elements must be established: (1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact. *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996). Plaintiff's Complaint does not satisfy the two required elements. First, Plaintiff failed to allege joint or several liability as to the Defendants. Plaintiff's Complaint fails to allege that the ERISA claims, and non-ERISA claims arise out of the same transaction or occurrence. Additionally, Plaintiff's Complaint does not sufficiently plead that there is any question of law or fact common to all 67 claims.

■ As evidenced in the Complaint, Plaintiff has brought 67 different claims and aggregated them into one lawsuit. It is important to note that all 67 claims are different transactions. Each patient had a different diagnosis and treatment. *See* (Plaintiff's Memorandum in Opposition to Motion To Dismiss, page 11).

As Defendant points out, these treatments were administered under 49 different ERISA plans, five governmental plans and three individual policies. Each of these 47 plans and insurance policies are likely to have different terms and provisions. For example, one plan might specifically include coverage for a bone marrow transplant, while another plan might cover the treatment but only for certain types of cancer. A third plan might provide partial coverage for treatment rendered for some cancers, full coverage for others, or no coverage at all. Furthermore, the legal issues will differ depending on whether a plan is ERISA or non-ERISA. (Defendants' Motion To Dismiss, pages 8–9). Federal Rules of Civil Procedure 20(a) provides in pertinent part:

> Joinder of defendants requires (1) a claim for relief asserting joint, several, or alternative liability *and arising from the same transaction, occurrence, or a series of transactions or occurrence.*

*See Tapscott,* 77 F.3d at 1360 (emphasis added). It is evident from Plaintiff's Complaint, the claims do not arise from the same transaction or occurrence and do not raise common question of law and fact. Therefore, joinder under Federal Rules of Civil Procedure is not appropriate.

## V. ERISA

### A. ERISA Patients With Claims Against Parties To This Action

Plaintiff's have generally alleged that the following parties have ERISA claims under various plans:

1. Cecilia Joyner, whose spouse is a retired employee of Defendant, GTE, and who was a beneficiary under the GTE self-insured plan, was treated at the IMPACT Center of Tampa with HDC for breast cancer from November, 1995 until April, 1996, and incurred charges of $141,783.13, upon which payment has been received in the amount of $41,370.14, leaving a balance of $100,412.99.

2. Chata J. McGuire, an employee of Defendant, AT & T, and insured through the

AT & T self-insured plan was treated at the IMPACT Center of Colorado Springs for lymphoma from June, 1995 until August, 1995, and incurred charges of $73,932.21, upon which payment has been received of $49,479.27, leaving a balance of $24,452.94.

3. Sharon Melchert, an employee of Defendant, North American Philips Corporation, was a beneficiary under their self-insured plan and was treated at the IMPACT Center of Albuquerque, New Mexico for lymphoma from September, 1995, until November, 1995, and incurred charges of $59,942.12, upon which payment has been received of $17,668.31, leaving a balance of $42,273.81.

4. Patricia Moore, whose husband, John, is an employee of Defendant, Amoco Corporation, is a beneficiary under Amoco's self-insured plan, was treated at the IMPACT Center of Greenville, South Carolina for ovarian cancer from August, 1995 until September, 1995, and incurred total charges of $52,835.16, upon which payment has been received in the amount of $20,338.35, leaving a balance of $32,496.81.

5. Nancy Peake, whose husband is an employee of Defendant, American Airlines, is a beneficiary under the American Airlines self-insured benefit plan, and was treated with HDC at the IMPACT Center of Albuquerque, New Mexico for breast cancer from November, 1995 until March, 1996 and incurred total charges of $90,133.40, upon which payment has been received in the amount of $17,433.68, leaving a balance of $72,699.72.

6. Linda S. Rains, whose husband, Jerry W. Rains, is a retired employee of Defendant, U.S. West, and is a beneficiary under its self-insured benefit plan, was treated at the IMPACT Center of Albuquerque, New Mexico for breast cancer with HDC from December, 1994 until June, 1995, and incurred total charges of $80,531.42, upon which payment has been received in the amount of $67,533.84, leaving a balance of $12,977.58.

7. Nancy Weeks, whose husband, Jeffrey Weeks, is an employee of Defendant, North American Philips Corporations, and is insured under a self-insured plan, was treated at the IMPACT Center of Albuquerque, New Mexico for breast cancer from November, 1994 until May, 1995, and incurred total charges of $55,125.31, upon which payment has been made in the amount of $25,635.87, leaving a balance of $29,489.44.

8. Beatriz Alvarez, whose employer is unalleged, and is insured under a MetraHealth fully insured plan, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Dade County from May 21, 1996 until June 7, 1996, and incurred total charges of $6,605.38, upon which no payment has been received, leaving a balance of $6,605.38.

9. Abraham Gason, an employee of Reynolds Metal Company and a beneficiary under a fully insured MetraHealth plan, was treated with HDC for multiple myeloma at the IMPACT Center of Richmond from August, 1995 until November, 1995, and incurred total charges of $53,176.51, upon which no payment has been received, leaving a balance of $53,176.51.

10. Dorothy C. Wallace, whose husband was a member of the Railroad Employees' National Benefit and Welfare plan, and who was a beneficiary under that plan, was treated at the IMPACT Center of El Paso for breast cancer from December, 1994 until April, 1995, with HDC and incurred total charges of $37,239.33, upon which payment has been received in the amount of $28,-611.16, leaving a balance of $8,628.73.

11. Joan Holly, whose husband is a member of the Railroad Employees' National Health & Welfare Plan, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Memphis, Tennessee from May, 1995, until August, 1995, and incurred total charges of $62,442.61, upon which payment has been received in the amount of $22,148.86.

12. Joe Kubes, an employee of Railroad Employees' National Health & Welfare Plan, was treated with HDC for multiple myeloma at the IMPACT Center of Houston from September, 1994 until February 1995, and incurred total charges of $70,352.36, upon which payment has been received in the amount of $53,490.65, leaving a balance of $16,861.71.

### B. ERISA Patients With Claims Against Plans That Are Not Parties To This Cause Of Actions:

Plaintiff's have alleged that the following patients have claims against plans that are not parties to this action:

1. Catholine Street, whose husband, Voit Street, is a retired employee of Monsanto and who is a beneficiary under the Monsanto self-funded plan, was treated with HDC for multiple myeloma at the IMPACT Center of Central Georgia from October, 1995 until January, 1996, and incurred charges of $80,916.98, upon which payment has been received in the amount of $10,723.99, leaving a balance of $70,192.99.

2. Carol Thompson, an employee with Graybar Electric is insured under a fully insured plan, and was treated with HDC for breast cancer at the IMPACT Center of Greenville, South Carolina from April, 1995 until July, 1995, and incurred charges of $3,699.00, upon which payment has been received in the amount of $2,253.00, leaving a balance of $1,446.00.

3. Robbie Gainey, an employee of Lithonia Lighting, was treated with HDC for breast cancer at the IMPACT Center of Central Georgia from February, 1996 until May, 1996, and incurred total charges of $69,714.23, upon which no payment has been received, leaving an outstanding balance of $69,714.23.

4. Kathleen Benefield, an employee of TechData Corporation, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Clearwater, Florida from March, 1995 until April, 1995, and incurred total charges of $56,443.88, upon which payment has been received in the amount of $34,488.74, leaving a balance of $21,955.14.

5. Larry Himes, an employee of Southwestern/Great American, Inc., was treated with HDC/PSCR for lymphoma at the IMPACT Center of Nashville from December, 1995 until January, 1996, and incurred total charges of $46,705.05, upon which payment has been received in the amount of $2,173.83, leaving a balance of $44,531.22.

6. Rhonda Hodge, an employee of Lithograph Printing Company, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Memphis, Tennessee from June, 1995 until July, 1995, incurred total charges of $58,214.92, upon which payment has been received in the amount of $20,590.75, leaving a balance of $37,624.17.

7. Jane Brown, an employee of Specialty Enterprises, was treated with HDC for breast cancer at the IMPACT Center of Nashville, Tennessee during May, 1996, and incurred charges as of the date of this Complaint of $1,062.50, upon which no payment has been received, leaving a balance of $1,062.50.

8. Anita Martinez, an employee of General Electric Corporation, and whose husband, Jesus Martinez, is an employee of U.S. West, was treated with HDC for breast cancer at the IMPACT Center of Albuquerque, New Mexico in January 1996, and incurred total charges for the portions of treatment she received in the amount of $3,113.25, upon which payment has been received in the amount of $2,029.29, leaving a balance of $1,083.96.

9. Ralph Brunet, an employee of General Electric Corporation, was treated with HDC/PSCR for multiple myeloma at the IMPACT Center of Greenville, South Carolina from November, 1994 until March, 1995, and incurred total charges of $67,046.70, upon which payment has been received in the amount of $38,479.26, leaving a balance of $28,567.44.

10. Tiabaldo Quervo, an employee of General Electric Corporation, was treated with HDC for lymphoma at the IMPACT Center of Dade County from January, 1994, until March, 1994, and incurred total charges of $42,549.60, upon which payment has been received in the amount of $28,927.04, leaving a balance of $13,622.56.

11. Edward Kilgore, an employee of Mita Copy Star America, was treated with HDC for cancer at the IMPACT Center of Greenville, South Carolina, and incurred total charges of $54,710.37, upon which payment has been received in the amount of $19,168.62, leaving a balance of $35,541.75.

12. Anke Sandoval, whose husband, Jorge Sandoval, is an employee of American Financial Group, was treated with HDC for breast cancer at the IMPACT Center of Tampa from December, 1995 until April, 1996, and incurred total charges of $97,822.84, upon which payment has been received in the amount of $2,432.91, leaving a balance of $95,389.93.

13. Theresa Stephens, an employee of The Consolidated Group, was treated with HDC for breast cancer at the IMPACT Center of Memphis, Tennessee from May, 1996, to June, 1996, and incurred total charges in the amount of $1,970.59, upon which no payment has been received, leaving a balance of $1,970.59.

14. Charlotte Welch, an employee of Ross Meter Service, was treated with HDC for breast cancer at the IMPACT Center of Knoxville, Tennessee from May, 1996 until June, 1996 and incurred total charges of $23,609.64, upon which no payment has been received, leaving a balance of $23,609.64.

15. Andrew Lubrano, an employee of Hill, Ward and Henderson, was treated with HDC/PSCR for lymphoma at the IMPACT Center of Miami from March, 1996, until May, 1996, and incurred total charges of $76,115.13, upon which no payment has been received, leaving a balance of $76,115.13.

16. Pamela Griffin, whose husband, Peter Griffin, is an employee of Doubletree Guest Suites, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Nashville, Tennessee from September, 1995 until October, 1995, and incurred total charges of $37,954.67, upon which payment has been received in the amount of $5,438.64, leaving an outstanding balance of $32,516.03.

### C. ERISA Patients With Claims In Which Plaintiff Failed To Allege The Plan :

1. Michael L. Holliday, an employee of Defendant, Allstate, was treated at the IMPACT Center of Savannah, Georgia from November, 1994 until approximately March, 1995 with HDC for non-Hodgkins lymphoma, and incurred total charges of $65,788.93, upon which payment has been received in the amount of $37,073.70, leaving a balance of $28,715.23.

2. Richard G. Kent, an employee of Met-Life, was treated with HDC/PSCR for his lymphoma from November, 1994 until January, 1995, and incurred total charges of $14,685.33, upon which Defendant has made no payments, leaving a balance of $14,685.33.

3. Lorene Clements, an employee of Defendant, Aluminum Company of America, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Nashville, Tennessee from August, 1995 until September, 1995, and incurred total charges of $37,849.82, upon which payment has been received in the amount of $1,452.26, leaving a balance of $36,397.56.

4. Roxie Fowler, whose husband, James Fowler, is an employee of Defendant, Amerada Hess Corporation, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Houston from June, 1995 until August, 1995, and incurred total charges of $62,224.73, upon which payment has been received in the amount of $48,005.65, leaving a balance of $14,219.08.

5. Catalina Gonzalez, whose husband is an employee of Defendant, American Airlines, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Dade County from September, 1994 until March, 1995, and incurred total charges of $75,064.40, upon which payment has been received in the amount of $32,632.97, leaving a balance of $42,431.43.

6. Rosemary Grant, whose husband is an employee of Defendant, Amerada Hess Corporation, was treated with HDC/PSCR for breast cancer at the IMPACT Center of Greenville, South Carolina from October, 1994 until February, 1995, and incurred total charges of $51,789.59, upon which payment has been received in the amount of $34,784.40, leaving a balance of $17,005.19.

7. Angela Russo–Afeld, an employee of Cellular One (now AT & T Wireless), was treated with HDC for breast cancer at the IMPACT Center of Tampa from August, 1994 until April, 1995, and incurred total charges of $73,602.58, upon which payment

has been received in the amount of $59,-828.82, leaving a balance of $13,773.76.

8. Robert White, who is a retired employee of AT & T, was treated with HDC for lymphoma at the IMPACT Center of Kansas City, Missouri, and incurred total charges of $63,502.84, upon which payment has been received in the amount of $19,026.01, leaving a balance of $41,766.06.

## D. ERISA Patients With Claims Against MetraHealth

1. James Germanson, whose employer is not alleged, and is a beneficiary under a fully insured MetraHealth plan, was treated with HDC for cancer at the IMPACT Center of Memphis, Tennessee, and incurred total charges of $42,970.61, upon which payment has been received in the amount of $23,-893.32, leaving an outstanding balance of $19,077.29.

2. Patricia Robertson, was an employee of Genuine Parts Company d/b/a NAPA AUTO PARTS, and was insured under a MetraHealth plan. She was treated at the IMPACT Center of Nashville with HDC for breast cancer from September, 1992 until December, 1992, and incurred charges of $65,494.72, upon which payment has been received in the amount of $44,214.48, leaving a total balance of $21,280.24.

3. Lester Morales, an employee of Chase Manhattan Bank, and a beneficiary under a fully insured plan which his employer maintains with MetraHealth, was treated with chemotherapy at the IMPACT Center of Tampa from March, 1996 until May, 1996 incurring total charges of $15,461.92 upon which payment has been received payment of $127.60, leaving a balance of $15,344.32.

4. Susan Roth, an employee of The Williams Companies, Inc., is insured with a fully insured plan under MetraHealth, and was treated with HDC at the IMPACT Center of Houston from March, 1996 until April, 1996, and incurred total charges of $49,-622.50, upon which no payments have been made, leaving a balance of $49,622.50.

5. David Starkweather, an employee of Hocker, Inc. and a beneficiary under a fully insured plan with MetraHealth, was treated at the IMPACT Center of Houston for lymphoma from April, 1996 until May, 1996, and incurred total charges of $73,831.13, upon which no payment has been received, leaving a balance of $73,831.13.

6. Karen Wallace, whose husband is an employee of Macon Telegraph, and who is a beneficiary under a fully insured plan by the Defendant, f/k/a The Travelers, was treated with HDC for breast cancer at the IMPACT Center of Central Georgia from June, 1995 until August, 1995, and incurred charges of $41,687.25, upon which payment has been received in the amount of $19,763.51, leaving a balance of $21,923.74.

## VI. ERISA Discussion

### A. Exhaustion of Administrative Remedies

■ In the Eleventh Circuit, Plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans prior to bringing suit in federal court. This requirement applies to both actions based on alleged statutory violations and breach-of-contract actions. *See Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1225–27 (11th Cir.1985), *cert denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986); *see also Springer v. Wal–Mart Associates' Group Health Plan,* 908 F.2d 897 (11th Cir.1990).

■ There are exceptions to the requirement that a Plaintiff must exhaust administrative remedies prior to bringing suit in federal court. In *Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 846 (11th Cir.1990), the Court held that an exception exists when resorting "to the administrative route is futile or the remedy is inadequate." In the Complaint, Plaintiff fails to sufficiently allege the futility it would encounter in exhausting administrative remedies available to it under the 46 different plans. *See* (Complaint, ¶ 20).

In paragraph 29 of Plaintiff's Complaint, Plaintiff alleges the following:

> Plaintiff has attempted to resolve the above cases and to exhaust plan remedies with METRAHEALTH and various other Defendants for the past several years. In

pursuit of the resolution of these matters, Plaintiff has met with METRAHEALTH on numerous occasions to discuss each and every case referenced herein, to no avail, and any further pursuit of exhaustion of administrative remedies, if any is required, would be completely futile, as there is no possibility that METRAHEALTH is going to pay any further sums on any of the above patients absent this litigation.

In light of the fact that Plaintiff brings this suit as an assignee of 67 patients, under 46 plans, Plaintiff's allegation fails to meet even the admittedly low requirements of notice pleading. It is unclear to the Court which plans, if any, the Plaintiff has attempted to exhaust its administrative remedies. Plaintiff has merely alleged generally that it has met with METRAHEALTH on numerous occasions to discuss each and every case and that it would be futile to exhaust administrative remedies. This is not a sufficient factual allegation to excuse the Plaintiff from exhausting administrative remedies.

Plaintiff also argues that since there was never a written denial for any of Plaintiff's claims by any of the Defendants, the review procedures can not be complied with. *See* (Plaintiff's Memorandum in Opposition, page 17). In *Springer*, however, the Eleventh Circuit found that the plan allowed an appeal for claims "denied or pended" and "other decisions" aside from "denials." The Court found that whether the Defendant refused to proceed with the plaintiff's claims or denied them outright is irrelevant. *See* 908 F.2d at 901. Therefore, Plaintiffs would have to show that the plan forbid an appeal absent a written refusal to excuse Plaintiff from exhausting administrative remedies. The Court finds that the Plaintiff had a duty to exhaust administrative remedies prior to bringing this cause of action in federal court. The Plaintiff is not excused from exhausting administrative remedies on the basis of futility. Plaintiff's ERISA claims in sections V(A), V(B), V(C) and V(D) are dismissed without prejudice for failure to exhaust administrative remedies.

### B. Plan Fiduciary

In their Complaint, Plaintiff fails to allege that MetraHealth is an administrator or fiduciary. Plaintiff merely alleges that Metra-Health is the claims administrator for all 67 claims.

An ERISA plan will have a fiduciary, whose duty is to review and decide on claims for benefits. The fiduciary may be an official of the employer/company, the insurance company insuring the plan, or someone independent of either. An ERISA plan also will have an administrator to take care of routine processing and paying claims. *Baker v. Big Star Div. of the Grand Union Co.,* 893 F.2d 288, 290 (11th Cir.1990).

ERISA does not have a definition for a "claims administrator." ERISA does, however, provide clear definitions of an "administrators" (29 U.S.C. Section 1002(16)(A)) and "fiduciary" (29 U.S.C. § 1002(21)(A)). Under 29 U.S.C. Section 1002(16)(A), the term "administrator" is defined as:

(1) (I) The person specifically designated by the terms of the instrument under which the plan is operated.

Section 1002(21)(A) defines a "fiduciary" as:

A person is a fiduciary with respect to a plan to the extent: (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any money or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

It is important to note that "administrators" are distinguished from "fiduciaries" by the former's lack of discretionary authority or discretionary control. *See Baker,* 893 F.2d at 291. Even a "plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary," and therefore does not have discretionary authority. *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1564 (11th Cir.1987).

A "claims administrator" that simply processes claims does not have any specific discretionary authority. Plaintiff has failed to properly plead that as a "claims administrator" MetraHealth is a "fiduciary" as defined by ERISA. Plaintiff's failure to allege that MetraHealth is a "fiduciary" is critical because ERISA does not regulate the duties of non-fiduciaries. *See Baker,* 893 F.2d at 289; *see also, Howard,* 807 F.2d at 1564. More importantly, an insurance company does not become an ERISA fiduciary simply by performing "administrative" functions and claims processing within a framework of rules established by an employer. *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1325 (9th Cir.1985).

Since Plaintiff has failed to allege that MetraHealth is a fiduciary as defined by ERISA, and ERISA does not regulate the duties of non-fiduciaries, Plaintiff has failed to plead a cause of action against Metra-Health, and MetraHealth must be dismissed as to Count I.

### C. ERISA Claim Against Non–Fiduciary

Because Plaintiff's failed to allege that MetraHealth is a fiduciary, Plaintiff's cause of action is against the patient's employers. Several of the patients' employers are not parties to this cause of action. The following is a list of patients' employers that are not parties to this cause of action: (1) Lithonia Lighting; (2) General Electric; (3) TechData Corporation; (4) Doubletree Guest Suites; (5) Southwestern/Great American, Inc.; (6) Specialty Enterprises; (7) Mita Copy Star America; (8) Cellular One (now AT & T Wireless); (9) Consolidated Group; (10) Ross Meter Service; (11) Hill, Ward and Henderson.

In the Complaint, Plaintiff comments that MetraHealth has failed to identify who the alleged proper party or parties should be. It is not for the Defendants to determine who Plaintiff should have properly sued. It is Defendants' obligation to address the insufficiencies of Plaintiff's Complaint, not to perform Plaintiff's legal work. *See* (Defendants' Reply Memorandum, page 15).

Therefore, if MetraHealth is not a fiduciary, and the parties referred to in section V(B) are not parties to this cause of action, then the patients' claims are clearly insufficient. Thus, Plaintiff's claims under Count I for patients in Section V(B) is dismissed with prejudice.

### D. ERISA Claim against Defendant Without Allegation Of Plan Identity

Approximately 49 of the 67 claims asserted by Plaintiff are allegedly ERISA claims. In 27 of the 49 ERISA claims, Plaintiff has failed to plead which claims are self-insured and which claims are fully insured. The basic requirements of ERISA, mandate that a plaintiff allege in its Complaint (and not by reference to a later filed affidavit or arguments in an opposition memorandum) the identity of the ERISA plan, the plan administrator or fiduciary of that plan, and the basis for liability of the defendant sued pursuant to ERISA. *See* (Defendants' Reply Memorandum, page 14). Plaintiff has failed to comply with these minimal requirements under ERISA. Furthermore, with regard to the 27 ERISA claims, Plaintiff failed to allege whether the claims were self-insured or fully insured. Failing to allege whether the claims were self-insured or fully-insured makes Plaintiff's Complaint unclear, and ambiguous. The Court is left to speculate who the fiduciary of the plan is. Therefore, the 27 claims which Plaintiff has failed to allege as self-insured or fully-insured plan should be dismissed from this cause of action.

### E. ERISA Patients With Claims Against MetraHealth

Plaintiff has alleged that MetraHealth is a fiduciary to the patients in section V(D). However, Plaintiff failed to exhaust its administrative remedies. Plaintiff's ERISA claims are dismissed without prejudice.

### VII. ESTOPPEL

Of the 67 patients, the Plaintiff has alleged that 49 of the claims are ERISA claims. *See* (Defendants' Exhibit "A", pages 1–2). Since three ERISA claims are not alleged, there

are only 46 remaining causes of action under ERISA.

In deciding whether a federal law preempts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). Under ERISA, Congress' intent is expressly set forth in the statutory language. ERISA generally preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. Section 1144(a). The Supreme Court has determined that a state statute "relates to" [6] or is covered by an ERISA plan "if it has a connection with such a plan." *See Shaw,* 463 U.S. at 96–98, 103 S.Ct. at 2900.

In *Swerhun v. Guardian Life Insurance Co. of America,* .979 F.2d 195, 198 (11th Cir.1992), the Eleventh Circuit stated, "We have consistently held that ERISA preempts state law breach of contract claims." *See, e.g., First National Life Insurance Co. v. Sunshine–Jr. Food Stores. Inc.,* 960 F.2d 1546, 1550 (11th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *see also Jackson v. Martin,* 805 F.2d 1498, 1499 (11th Cir.1986). In *Amos v. Blue Cross–Blue Shield of Ala.,* 868 F.2d 430, 431 (11th Cir.1989), *cert. denied,* 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989), *reh'g. denied,* 875 F.2d 874 (11th Cir.1989), the Court held "there can be no dispute that the common law causes of action asserted by the plaintiffs, bad faith refusal to pay, fraud and breach of contract relate to an employee benefit plan and therefore fall within ERISA's express preemption clause."

■■■ Plaintiff alleges that Defendant MetraHealth represented to them that "benefits in full *as payable under each plan* would be provided." (emphasis added). *See* (Plaintiff's Complaint at page 35). Plaintiff then relied on MetraHealth's representation that benefits would be provided for. Based on this reliance, ROI provided treatment and incurred medical charges and expenses. *See* (Plaintiff's Complaint at page 35). The ques-

tion presented is whether Plaintiff's reliance was reasonable and whether Plaintiff suffered detrimentally as a result of its reliance. However, .Plaintiff's estoppel claim—since it obviously relates to the ERISA plan—is preempted by ERISA, and therefore falls within ERISA's express preemption clause. *See Amos,* 868 F.2d at 431.

Based on the analysis in the foregoing ERISA section VI, the claims under the Count II Estoppel claim are dismissed.

### A. Non–ERISA, Non–Diversity

Based on the analysis in the Diversity section IV(A), the following patients' claims do not exceed the jurisdictional amount of $50,000: (1) David Whitten; (2) Barbara Stover; (3) John Martin; (4) Gail Andich; (5) Elizabeth Carroll; (6) Betty Reynaud; (7) Myrna Hudson; (8) Leonard Glazer; (9) Hazel Bethel; (10) Judith Hager; (11) Alicia Rodriguez; (12) Sandra Monetta; (13) Margaret Speck; (14) Jeanine Archambault; (15) Geraldine Borzello; (16) Beverly C. Dorsett; (17) Carmen Alverio; (18) Doris Russell; (19) Roy White; (20) Geraldine Kidd.

Since these claims are not governed by ERISA, and the claims do not exceed the jurisdictional amount of $50,000, the claims are dismissed with prejudice because the Court does not have subject matter jurisdiction to Plaintiff's Count II Estoppel claim.

### B. Non–ERISA, Diversity Group

Marlene McClean, an employee of Dade County Public Schools does not have a claim that is governed by ERISA. Her claim for $68,499.16 meets the diversity jurisdictional amount of $50,000, therefore the Court has jurisdiction to address her claim.

■■■ The following elements must be proven before a court may apply the doctrine of equitable estoppel:

(1) a misrepresentation of a material fact by the party being estopped, which is contrary to a later asserted representation or position by that party, (2) reliance on that

---

6. *See* Black's Law Dictionary 1158 (5th ed. 1979) ("Relates" is defined as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.")

representation by the party claiming estoppel, and (3) a detrimental change in the position of the party claiming estoppel caused by that party's reliance on the misrepresentation.

*Lennar Homes, Inc. v. Gabb Construction Services, Inc.,* 654 So.2d 649, 651 (Fla. 3d DCA 1995). Each requisite element of equitable estoppel is stated in Plaintiff's Count II claim. *See* (Plaintiff's Complaint, pages 34–36).

 The allegation of a "material misrepresentation," although not specifically stated, can be implied from paragraphs 35 and 37 of the Complaint.[7] Paragraph 35 states in pertinent part:

"Plaintiff inquired ... as to whether or not The charges would be covered and benefits provided. In response to Plaintiff's inquiries, the Defendant ..., replied and represented to Plaintiff that benefits in full ... would be provided."

Paragraph 37 states that "[b]ased upon the specific representation of the Defendant ..., Plaintiff relied thereupon and provided treatment ...."

In the first element of equitable estoppel, the term "material fact" is used. Black's Law Dictionary, 6th Ed. at p. 977 provides a clear definition of "material fact": A "material fact," in the contractual context, is a fact, in the absence of which the contract would not have been made. The allegations in the Complaint meet this definition. Paragraph 37 of the Complaint states:

Plaintiff would not have provided treatment absent the specific representations of approval by MetraHealth ...

The second requirement of the first element is also satisfied. In paragraph 37 of the Complaint, Plaintiff states that [d]espite numerous demands for payment, consistent with [its] representations, Defendants have failed and refused to pay the outstanding balances due. In this instance, Defendants have asserted a contrary position to their prior representation, and therefore the first element is satisfied. *See* (Plaintiff's Complaint at page 35); *see also* (Plaintiff's Opposition Memorandum at page 23).

Plaintiff also satisfies the second and third elements of equitable estoppel. The second element, which requires "reliance on that representation by the party claiming estoppel," is clearly stated in Plaintiff's Complaint, Paragraph 37:

Based upon the specific representation of the Defendant ... that benefits would be provided under the plans, Plaintiff *relied* thereupon and provided treatment ....

Furthermore, the third element which requires "a detrimental change in the position of the party claiming estoppel ..." is expressly stated in Paragraph 38 of Plaintiff's Complaint:

Plaintiff has relied to its detriment on the representation of the Defendant ....

Accordingly, Plaintiff's second count for estoppel, as it relates to Marlene McClean's claim, has been properly pleaded.

## CONCLUSIONS

In light of the above, it is

**ORDERED AND ADJUDGED** that Defendant's, MetraHealth, et al., Notion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss With Prejudice under Count I and Count II is **GRANTED** as to patients claims in sections II(B), II(C), and II(D). It is further

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Without Prejudice under Count I and Count II is **GRANTED** as to patients claims in sections V(A), V(B), V(C), and V(D). It is further

**ORDERED AND ADJUDGED** that Defendants Motion to Dismiss With Prejudice under Count I and Count II is **GRANTED** as to patients claims in sections V(B). It is further

**ORDERED AND ADJUDGED** that Defendants Motion to Dismiss With Prejudice under Count I and Count II is **DENIED** as to Marlene McClean's claims. It is further

7. The paragraph numbers in the Complaint skip from paragraph 35 to paragraph 37, omitting 36.

**ORDERED AND ADJUDGED** that all pending motions are **DENIED AS MOOT.**